**SAM et al. v. SULLIVAN et al.**

No. 11673.

Court of Civil Appeals of Texas. Galveston.

May 9, 1945.

Rehearing Denied Aug. 1, 1945.

Vinson, Elkins, Weems & Francis and C. M. Hightower, all of Houston, for appellants.

Spiner & Pritchard and Chas. B. Spiner, all of Houston, for appellee Sullivan.

Wood, Gresham, McCorquodale & Martin and M. S. McCorquodale, all of Houston, for appellee Employers Liability Assurance Corporation, Ltd.

CODY, Justice.

This is a collision case between an automotive ambulance which was driven by appellee Sullivan, and an automobile which was driven by appellant, Mrs. Sam. The collision occurred on the morning of June 17, 1943, at the intersection of Gray Avenue and San Jacinto Street in Houston. There are automatic signal lights at the intersection to control traffic, and they were in operation at the time.

Sullivan, plaintiff below, pled that on the occasion in question he was on emergency duty rushing a sick woman to a hospital to be operated on, with his siren continuously sounding. He pled certain ordinances of the City of Houston, a home rule city, as giving him the right of way, even against the red light, alleging that he was on an emergency mission. He further alleged that the ordinances requiring that the owner and the driver of an ambulance have permits were void because of unbridled discretion placed in the officer who dispensed them. He further pled such ordinances had been revoked, and had been so construed by the administration officials of the city, and that no permits had been for a long time issued. He pled detailed facts, and that he had the right of way, and that, due to certain specified acts of Mrs. Sam, alleged to be negligence, the collision occurred, causing personal injuries hereafter specified, and he laid his damages in the sum of $50,-000.

The Employers Liability Assurance Corporation was the carrier of the workmen's compensation insurance for the Pat Foley Funeral Home, the owner of the ambulance,

and employer of Sullivan. It intervened in the suit to seek subrogation against appellants for sums paid out under its policy for medical expenses and weekly compensation benefits.

Appellants answered Sullivan's petition and the Insurance Company's intervention with a general denial, a plea of contributory negligence, and a plea that Mrs. Sam was placed in a position of sudden peril immediatly prior to the collision, which was discovered by Sullivan in time that he could have, by the reasonable use of the means at hand, avoided the collision. In connection with the plea of contributory negligence appellants pled certain ordinances, the nature of which appear hereafter.

The trial was to a jury, and submission was upon special issues, all of which, except special issues 8 and 22, were answered favorably to Sullivan. Because of points urged by appellants we have appended to this opinion special issues 8, 9, 10, 12, 18, 20, 22, 23, and 30, together with the jury's answers.

The jury found among other things that Sullivan was making an emergency call, and that Mrs. Sam's failure to slacken speed was negligence, that she failed to keep a proper lookout, which was negligence; that her failure to stop before entering the intersection was negligence and a proximate cause of the collision. Upon the verdict the court rendered judgment for Sullivan and the intervenor—the intervenor having filed a remittitur. Appeal was perfected by appellants.

Among the principal contentions urged by appellants is this: That Mrs. Sam had the right of way, and that under the finding of the jury that she entered into the intersection first, by reason of an ordinance hereafter referred to, it was established as a matter of law that the collision resulted from contributory negligence.

The following is, in substance, what was proved upon the trial. The facts are stated most strongly as required by the state of the record.

On the forenoon of June 17, 1943, Mrs. Sam was proceeding south on San Jacinto Street. The windows of her car were up to prevent the wind from disturbing her hair. She did not hear the siren which was being sounded by Sullivan as he was driving the ambulance east on Gray Avenue. But the siren was clearly audible so as to be heard generally for a distance of some blocks. She crossed into the intersection of Gray and San Jacinto first. She did not see the ambulance or know of its approach until it was practically on her, and when it was too late to avoid the collision. She heard the siren as she passed into the intersection.

With Sullivan was his helper, and in the ambulance was a woman passenger with appendicitis, and a woman companion who was accompanying her to the hospital. When he reached the intersection of Gray and Main—two blocks away from the intersection of Gray and San Jacinto—he had the green light. But when he crossed Main he saw that the signal had changed and he was going against the the red light. He had been going between 25 and 30 miles an hour while he had the green light, but had reduced his speed to between 10 and 15 miles an hour when he crossed against the red light at the last intersection before the intersection of Gray with San Jacinto. He had shifted his gears back into second, and "rode the brakes" as he approached the intersection with San Jacinto, maintaining a speed between 10 and 15 miles an hour. The red light was against him at the intersection where the collision occurred, and he knew it. He saw no automobile on San Jacinto on his left as he approached it, though he looked both to his right and to his left (the side from which Mrs. Sam was coming). He remembered nothing from the time he came within 5 or 6 feet of the west curb on San Jacinto. There was evidence that before the collision he turned toward the right to try to avoid the collision. With head injuries it is not uncommon for the memory to be blanked out for varying periods of time before the blow produces unconsciousness, and of course during the period of unconsciousness. His brakes were in good condition, and he could have brought the ambulance to a stop almost instantly.

Appellants contended that Mrs. Sam had the right of way. Not only had she the green light, but subsection (a) of section 2289 of the Code of the City of Houston reads: "The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has already entered the intersection from a different street."

The City of Houston issued a new Code effective December 31, 1942, and for reasons which they considered important, appellees have introduced into evidence section 125 of the new Code, permitting a speed

of 40 miles an hour to an ambulance, and city ordinance 3787, passed January 21, 1937, which is carried forward in the Code as the said section 125. They also introduced section 2312 of the new Code, which carries forward ordinance 7553, passed August 6, 1941, and ordinance 6151, passed January 24, 1940; they also introduced said ordinances. By these ordinances it was provided, in substance, that operators of ambulances making emergency calls while sounding a siren shall not be required to comply with the directions of official traffic control devices, official traffic signals or stop signs. We believe it is not necessary to set forth the wording of the ordinance relating to green and red light traffic control,—among exceptions to such control is listed "ambulances when answering emergency calls."

Appellants sought to introduce in evidence, but were refused the right, sections 119, 120, and 121, of the City Code. We have been spared the confusion of the numbers of the original ordinances, upon which these sections which are carried forward in the Code are based.

Section 119 provides that no ambulance shall be operated within the city unless the owner has applied to and received from the director of public works a permit for the operation thereof, as prescribed in Section 120.

Section 120 provides that the owner shall make application to the director of public works upon a form to be prescribed by him, "which application, among other requirements to be established by the director of public works, shall contain the name of the owner, the number of ambulances desired to be operated, and, if a motor vehicle, the brand or make of each car and the engine number thereof shall be applied. Upon presentation of said application to the director of public works, he shall examine the same and if in his opinion the application should be granted, he shall issue a permit to said owner. * * *" It is further provided that the driver must obtain a permit.

Section 121 provides that the application by one desiring to drive an ambulance "shall be in form prescribed by the director of public works, and shall, among other requirements, make provision for the owner * * * to signify his desire for said driver to operate the same. Upon the presentation of said application to the director of public works, he shall examine the same

and if in his opinion said application should be granted, he shall register the name of said applicant or driver in a book. * * *"

The undisputed evidence showed that the owner of the ambulance had no permit, and had applied for none; and so of Sullivan. Over appellants' objection, appellees proved that the City did not and would not require or issue permits.

Appellants predicate their appeal upon 18 points.

Appellants' first point complains of the court's refusal in response to appellants' motion to set aside the jury's findings to special issues 9 and 23, and render judgment for appellants on answers to special issues 8 and 22. These special issues and answers appear from the appendix hereto appended.

Appellants' first point is based on the assumption that subsection (a), section 2289, City Code, was of binding force when automatic signal lights have been installed and are in operation. As appears above, that ordinance makes it the duty of a driver approaching an intersection to yield the right of way to a car that has already entered the intersection. In the present case, as found by the jury, Mrs. Sam's car had entered the intersection, when Sullivan entered it.

It is our opinion that the ordinance so relied on by appellants was not intended to apply, and does not apply, to an intersection where automatic signal lights are installed and are in operation, controlling traffic. The purpose of the green light is normally to authorize pedestrians and vehicles to cross the street, and the red light to prevent such crossing. So that normally, if a driver runs a red light and collides with a driver crossing on the green light, the fact that the first driver got into the intersection first will not avail him. The red light is there to stop traffic normally, and should be obeyed normally. The special traffic ordinance supersedes the general. Havins v. Dallas Ry. Co., Tex. Civ.App., 130 S.W.2d 878; Dallas Ry. Co. v. Allen, Tex.Civ.App., 43 S.W.2d 165.

But the special traffic ordinance, which requires obedience to automatic signal lights, provides an exception to such obedience. It provides a priority right of way over the green light for fire wagons, funeral processions, ambulances answering emergency calls and sounding its siren. Sullivan was doing both. We are unable to

see that if Mrs. Sam failed to hear or obey the wailing of the siren of the approaching ambulance, her situation would be different from the ordinary case where a driver through inattention fails to see a red light at an intersection and runs it. The court did not err in refusing appellants' motion; and their points 1 and 2 are overruled.

■ In their third and fourth points appellants complain of the court's refusal to give a specially requested charge which affirmatively excluded any damages sustained by Sullivan which were solely attributable to a prior collision.

The injuries for which Sullivan blamed appellants in his petition were "permanent brain and spinal damage, damage to his central nervous system, vascular system, kidneys, bladder and back and legs, causing constant nervousness, insomnia, head ache, loss of control of kidney function, backaches, traumatic hypertrophic arthritis of back, loss of memory, and power of mental concentration, phlebitis and partial paralysis of legs, and general permanent physical fatigue and morose, depressed mental condition, and loss of weight, none of which existed prior to the collision."

The evidence showed that Sullivan had been in a collision on November 9, 1942, and had suffered the puncturing and destruction of the drum in his left ear, and had lost the complete hearing of his left ear. He testified that with that exception he had completely recovered from injuries received in said former collision. A special issue, in the usual form, limited recovery to injuries, if any, directly and proximately caused by the negligence, if any, of Mrs. Sam, taking into consideration certain specified elements of damage and none others. Such charge was sufficient to inform the jury that no compensation should be allowed except for damages resulting from the collision in question. It is only where the injuries flowing from prior existing infirmities and those flowing from the negligence of the defendant are closely connected and intermingled so that the jury might become confused and allow improper elements of damage that the doctrine of Dallas Railway & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683, is applicable, requiring that the court affirmatively charge the jury that the plaintiff is entitled to recover only to the extent his injuries were aggravated by defendants' negligence. See Cullinan v. Hare, Tex.Civ.App., 181 S.W.2d 594, 597. We think there was no oc-casion here for the special charge requested by appellants, and no error in refusing it.

By their fifth point appellants complain of the court's refusal to submit the defense of sudden emergency.

■ This, we believe, is a proper statement of the application of the rule as to the defense of sudden emergency: "An automobile driver who, by the negligence of another and not his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice and one that would have been required in the exercise of ordinary care, but for the emergency." 5 Am.Jur. 600.

■ In every collision case a time comes when both cars are in a position of peril. And ordinarily it may be assumed that both parties discover the peril before the collision occurs. But only a driver who finds himself in an emergency through the negligence of another may claim the defense referred to. How, in collision cases, is it to be determined before submission to a jury, if a defendant is entitled to an issue on emergency as a defense? The right to a defensive issue is determinable on the basis of evidence prior to the verdict. Dixie Motor Corp. v. Galvan, 126 Tex. 109, 86 S.W.2d 633, 634. In the present case the evidence clearly indicates that the siren was sounding continuously. By ordinance the right of way belongs to an ambulance on an emergency call, sounding its siren. It cannot be deprived of such right of way by the inattention of others. The fact that Mrs. Sam found herself in an emergency under the evidence could only be attributed in part to her failure to keep a proper lookout. If Sullivan failed to keep a proper lookout, he was guilty of contributory negligence. But the evidence, prior to submission to the jury, established that the siren was sounding its warning, and it cannot be said that there was any question that the warning was being given. Thus it was established as a matter of law that (assuming the ambulance was on an emergency) the ambulance had the right of way. It cannot be said that Mrs. Sam, who broke in on the right of way, was placed in an emergency without fault on her part. It is our

opinion that the court did not err in declining to give the requested issue.

By their sixth point appellants complain of the admission in evidence of section 125 of the Code, and ordinance No. 3787, on which it is based, permitting an ambulance on an emergency call to drive 40 miles an hour. Point 7 complains of the admission in evidence of section 2312 of the Code, and the ordinances on which it is based, exempting an ambulance answering an emergency call, from stopping for a red light. Point 9 complains of the refusal to admit in evidence sections 119, 120, and 121 of the Code, relating to permits for ambulances.

It was proved that neither Sullivan's employer, the owner of the ambulance, nor Sullivan had obtained a license or applied for one. And it is appellants' position that the ambulances which are exempted from stopping for red lights or permitted a speed of 40 miles an hour on emergency calls, are only those ambulances whose owners have obtained a license, and only when driven by a driver who has obtained a license.

On the other hand, it is the position of appellees that the ordinances relating to permits for ambulances are void under the holding by the Supreme Court in Walsh v. Dallas Ry. Terminal Co., 140 Tex. 385, 167 S.W.2d 1018, 1021. It was there held that an ordinance which attempted to vest the chief of police with authority to designate what vehicles should have priorities of right of way of an "authorized vehicle", was void. This, because "it sets up no standard by which the chief of police is to be guided in making such a designation. It is left to his unbridled discretion to say to whom the law shall be applicable, and to whom it shall not be applicable."

We have concluded that the permit ordinances here in question are void for the same reason. The Houston ordinances provide that the director of public works is to prescribe a form of application. As appears above, section 120 prescribes that the application must contain the name of the owner of the ambulance, the number of his ambulance, the make of such car, and its engine number. What else the form shall contain is left to the director of public works. It is left entirely to his opinion or discretion, first, what the form is to contain except the matters just stated, and to his opinion if the application shall be accepted. There are no standards set up to guide the director of public works. And what we have said applies with equal force to section 121.

Appellants ably contend that, should the permit ordinances be held void, the provisions in the ordinances allowing ambulances on emergency calls to run at 40 miles an hour, and to run a red light, must fall, because, they contend, the ordinances are in pari materia, so that if the permit ordinances are void, the priority given by the ordinances to ambulances answering emergency calls must also fall.

We take it that the purpose of appellees in proving up the sections of the code, and the ordinances upon which they were based, was to establish that the sections giving the right of way to ambulances answering an emergency call, to enable them to run a red light, was independent of the permit ordinances. The code provides that ordinances not contained therein, and not inconsistent with ordinances contained therein, remain in force.

The rule is that part of an ordinance, like part of a statute, may be void without affecting the validity of other parts, if they are not dependent on each other; that is, if the valid portions are capable of being executed without the invalid part, in accordance with the will of the legislative body. Hurt v. Cooper, Tex. Civ.App., 113 S.W.2d 929. We are unable to say that the ordinance providing priority to ambulances answering emergency calls would not have been enacted if it had been known that sections 120 and 121 would be held invalid. Section 4 of the Code provides that if any section, subsection, etc., is held invalid the remaining portions of the Code shall not be affected. Since we are at least highly doubtful of the interdependence of the ordinances, except sections 119, 120 and 121, we must follow this expressed assurance in the Code that they would have been so enacted. Appellants make no contention, we believe, that the failure to have a driver's license or ambulance permit would constitute a proximate cause of the collision; but contend only that the exemptions to the ordinances apply merely to ambulances which have licenses, and so, are lawfully upon the streets. We overrule the points discussed.

The views which we have just expressed render appellants' point 8 immaterial.

Appellants complain, in their point No. 10, of the court admitting testimony to

the effect that the City of Houston did not issue licenses under sections 120 and 121. We assume that such evidence was admitted for the purpose of showing that in the administration of its traffic laws, the City, by administrative construction, had construed said ordinances to be void. We believe the evidence was admissible for that purpose. We overrule the point.

█ Under their points 11–16, inclusive, appellants complain that the jury's answers to special issues 10, 12, 18, 20, 23, and 30, are against the great weight and preponderance of the evidence. Such special issues and the answers are, as stated above, appended hereto. We have carefully considered the evidence in connection with the points urged and have concluded that in each instance the evidence is sufficient to raise the issues and to sustain the answers.

█ The nurses' bills were $6 a day. This was proved to be the usual and customary charge at the time the nursing services were rendered, and it was proved that the rates had since risen to $8 a day. It was proved that the bills had been approved by the physician in charge. We think that under the evidence, even though no expert testified that such bills were reasonable, there was sufficient evidence to raise the issue of reasonableness of the charge, and sustain a finding of reasonableness.

█ Appellants complain that counsel for intervenor in his closing argument to the jury was erroneously permitted to state that appellants could have had Mrs. Stewmon's doctor to testify if the call was not in fact an emergency. Mrs. Stewmon was the passenger being transported to the hospital at the time of the collision.

We have no doubt that the remark complained of did have the effect of stating that appellants could have produced Mrs. Stewmon's doctor as a witness if they desired. Nor was the argument invited by or in answer to the argument of appellants' counsel so as to excuse it. But we do not think the argument reversible error. It was not disputed that Sullivan was given to understand that Mrs. Stewmon's case was an emergency one which required that she be rushed to the hospital. An ambulance driver is not a physician, and if, in the exercise of reasonable prudence, he accepts a statement that a patient must be rushed to the hospital for an operation, by doctor's orders, he comes within the meaning of the exemption of an emergency call under the ordinance.

There being no reversible error, the judgment of the court is affirmed.

Affirmed.

## APPENDIX.

"Special Issue No. 8. Do you find from a preponderance of the evidence that the automobile being driven by Mrs. Jake Sam had already entered the intersection of San Jacinto Street and Gray Avenue as the ambulance being driven by the plaintiff, Francis M. Sullivan, Jr., was approaching the intersection of said streets?" Answered: "Yes".

"Special Issue No. 9. Do you find from a preponderance of the evidence that the failure of the plaintiff, Francis M. Sullivan, Jr., to yield the right of way to Mrs. Jake Sam at the intersection of said streets was a proximate cause of the collision?" Answered: "No".

"Special Issue No. 10. Do you find from a preponderance of the evidence that plaintiff, Francis M. Sullivan, Jr., when approaching and crossing the intersection of Gray Avenue and San Jacinto Streets drove the ambulance at a speed greater than was reasonable and prudent under the conditions then existing, having regard to the actual and potential hazards, if any, at said intersection?" Answered: "No".

"Special Issue No. 12. Do you find from a preponderance of the evidence that immediately before the collision in question the plaintiff, Francis M. Sullivan, Jr., was driving the ambulance at an excessive rate of speed under the attending circumstances?" Answered: "No".

"Special Issue No. 18. Do you find from a preponderance of the evidence that Francis M. Sullivan, Jr., failed to keep such a lookout for Mrs. Sam's automobile as he immediately approached the intersection of San Jacinto Street and Gray Avenue as would have been kept by an ordinarily prudent person, in the exercise of ordinary care, under the attending circumstances?" Answered: "No".

"Special Issue No. 20. Do you find from a preponderance of the evidence that the plaintiff, Francis M. Sullivan, Jr., failed to exercise that degree of care of an ordinarily prudent person, in the exercise of ordinary care, in not stopping before entering the intersection of San Jacinto Street and Gray Avenue, under the attending circumstances?" Answered: "No".

"Special Issue No. 22. Do you find from a preponderance of the evidence that

the plaintiff, Francis M. Sullivan, Jr., failed to reduce the speed of his ambulance before entering the intersection of San Jacinto Street and Gray Avenue?" Answered: "Yes".

"Special Issue No. 23. Do you find from a preponderance of the evidence that the plaintiff, Francis M. Sullivan, Jr., failed to exercise that degree of care of an ordinarily prudent person, in the exercise of ordinary care, in not reducing the speed of his ambulance before entering the intersection of said streets under the attending circumstances?" Answered: "No".

"Special Issue No. 30. Do you find from a preponderance of the evidence that the plaintiff, Francis M. Sullivan, Jr., in entering the intersection of Gray Avenue and San Jacinto Street with a red light facing him, under the attending circumstances failed to exercise that degree of care of an ordinarily prudent person, in the exercise of ordinary care?" Answered: "No".

### On Motion for Rehearing.

Upon submission of this case the parties waived oral argument. Upon consideration of appellants' able motion for rehearing, the court desired the parties to argue it orally with special reference to certain points.

After careful consideration we have concluded that we correctly ruled on original hearing that the permit ordinances were void under the ruling of the Supreme Court in Walsh v. Dallas Railway Terminal Company, 140 Tex. 385, 167 S.W.2d 1018, cited in our original opinion.

Upon careful reconsideration we are likewise of the opinion that we correctly held on original hearing that subsection (a), section 2289, City Code, is superseded by the traffic signal ordinance so far as concerned street intersections where traffic signals are installed, and are operating.

In discussing the court's refusal to submit a defensive issue on sudden emergency, which defense appellants had fully pled, we used language which appellants consider as a holding that "as a matter of law, that the emergency arose through the negligence of Mrs. Sam, (a) through her inattention to Sullivan; (b) failure to keep a proper lookout; and in breaking into the right of way." The language is probably subject to that construction, and erroneous. What we meant to rule was that, as a matter of law, the issue of sudden emergency was not in

the case. A plea of sudden emergency is a defensive plea by way of excusing what would be culpable if done calmly. If the issue being tried was the liability of appellants for something done by Mrs. Sam which would be excusable if done in a sudden emergency, then the issue would have been in the case.

We have corrected certain errors in the opinion relating to the record which have been called to our attention.

The motion for rehearing is refused.

Refused.