DeVORE, J.
*24 This decision addresses the sufficiency of evidence offered to prove that amounts sought as medical expenses were reasonable for purposes of restitution in a criminal proceeding. Defendant appeals a judgment of conviction on a variety of charges. He challenges the trial court's jury instructions and its failure to merge two of the verdicts into a single conviction. The state cross-appeals a supplemental judgment, assigning error to the trial court's denial of its request for restitution to CareOregon, a state-funded health insurance company, for the amount paid to cover the victim's medical expenses. The state argues that the record contained sufficient evidence to show that the medical expenses were "reasonable" as ORS 137.103(2) and ORS 31.710 require. As to defendant's appeal, we affirm without written discussion. As to the state's cross-appeal, we reverse and remand the supplemental judgment.
The relevant facts are not in dispute. The case arises from a series of altercations that led to defendant stabbing the victim with a knife and the victim's car crashing into a tree. At the scene, the victim was unresponsive and barely breathing. He was helicoptered to the trauma center at Oregon Health and Science University Hospital (OHSU) where he underwent emergency surgery and remained for two weeks.
Defendant was charged with several offenses: attempted murder, ORS 161.405 and ORS 163.115 ; first-degree assault, ORS 163.185 ; two counts of unlawful use of a weapon, ORS 166.220 ; menacing, ORS 163.190 ; and menacing constituting domestic violence, ORS 163.190. The jury returned guilty verdicts for all of the charged offenses except attempted murder.
At a subsequent hearing, the state requested $ 46,403.04 in restitution to recover the amount that CareOregon paid for the victim's medical bills.[1] To substantiate its request, the state submitted in evidence copies of health insurance claim forms that had been filed *25 with CareOregon for the victim's treatment. It also called CareOregon's subrogation coordinator as a witness. She had generated a ledger, which was admitted into evidence, detailing the amounts that various treatment providers charged and the reduced amounts that CareOregon actually paid for the victim's medical expenses arising from the incident.[2] The subrogation coordinator testified that CareOregon pays for medical expenses at state Medicaid rates, which are "much lower rates than * * * standard commercial insurance." She testified that, although the victim's medical providers charged $ 262,006.83 for his treatment, CareOregon paid just $ 46,403.04. The subrogation coordinator also testified that no CareOregon staff specifically reviews the *452 reasonableness of services provided, unless given cause to do so. Rather, claims typically "go through the system automatically."
At the close of the hearing, the state asked the trial court to order defendant to pay the $ 46,403.04 to CareOregon. Defendant urged the trial court to deny the request, arguing that the state failed to show that the medical expenses were reasonable as required under Oregon statute. Defendant relied on State v. McClelland , 278 Or. App. 138, 372 P.3d 614, rev. den. , 360 Or. 423, 383 P.3d 862 (2016), for the proposition that a medical bill alone cannot establish reasonableness. Defendant contended that "it's not a question of whether [the bill] was paid or not," but rather, whether "the services were reasonable and at a reasonable cost."
The trial court reluctantly agreed with defendant, observing that, although it "look[ed] at the documents and remember[ed] what the facts were and the amounts seem[ed] very reasonable," McClelland was "right on point." The court perceived itself to be "uncomfortably in the same position" as the McClelland court, noting that no one testified to having assessed reasonableness. The trial court denied restitution *26 for the medical bills based on its legal assessment that the record was insufficient to permit a finding of reasonableness.
The state cross-appeals the supplemental judgment, assigning error to the trial court's denial of restitution to CareOregon. The state argues that a discounted medical bill paid by an insurer or "other informed market participant" is prima facie evidence of reasonableness unless otherwise rebutted. Defendant responds that our prior decision in McClelland forecloses that conclusion. He insists that a medical professional should testify to whether treatments and associated charges are reasonable and necessary.
As presented, the issue requires this court to determine whether the record contains evidence from which a factfinder could infer that the medical expenses were reasonable. We review orders of restitution for errors of law. McClelland , 278 Or. App. at 141, 372 P.3d 614 (citation omitted). It is a question of law whether a trial court must deny restitution because the state failed to provide sufficient evidence of reasonableness. See Lea v. Farmers Ins. Co. , 194 Or. App. 557, 559, 96 P.3d 359 (2004) ("To the extent that resolving this case requires us to decide whether a court has no option but to grant the motion [to strike] if plaintiff presents no evidence that his expenses were reasonable and necessary, the question is one of law.").
Oregon statute describes the process by which the state may seek to recover restitution from a criminal defendant. In relevant part, ORS 137.106(1)(a) provides:
"If the court finds from the evidence presented that a victim suffered economic damages, * * * the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."
For the purpose of that provision, "economic damages" has "the meaning given that term in ORS 31.710 [.]" ORS 137.103(2).[3] With that reference, the statute adopts the *27 definition of economic damages employed in civil cases. That is, economic damages are the "objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services[.]" ORS 31.710(2)(a).[4]
Accordingly, our understanding of economic damages in civil cases informs our analysis of economic damages in criminal restitution proceedings. See State v. Ramos , 358 Or. 581, 588, 368 P.3d 446 (2016) ("[T]he legislature's cross-reference to the definition * * * and [its] purpose in creating the restitution procedure as a substitute for a civil proceeding make civil law concepts relevant *453 to our interpretation of ORS 137.106."); State v. Islam , 359 Or. 796, 800, 377 P.3d 533 (2016) ("[R]estitution under ORS 137.106 is informed by principles enunciated in civil cases concerning recoverable economic damages." (Citation omitted.)); McClelland , 278 Or. App. at 142, 372 P.3d 614 ( ORS 137.106(1)(a)"incorporates the civil statutory definition of economic damages set forth in ORS 31.710(2)(a)").[5]
Like a plaintiff in a civil case, "the state has to prove that the cost of such services is 'reasonable' " before restitution can be awarded for hospital or medical expenses. McClelland , 278 Or. App. at 143, 372 P.3d 614. "The amount that one pays for services generally is admissible and often may be an important factor in determining the reasonable value of those services." White v. Jubitz Corp. , 347 Or. 212, 243, 219 P.3d 566 (2009) (citation omitted). Recoverable damages are based "on the value of necessary services." White v. Jubitz Corp. , 219 Or. App. 62, 68, 182 P.3d 215 (2008), aff'd , 347 Or. 212, 219 P.3d 566 (2009) (emphasis in *28 original).[6] For that reason, evidence merely showing the existence of treatment bills is inadequate. McClelland , 278 Or. App. at 144, 372 P.3d 614 (submission of treatment bills, "without more, is insufficient proof for recovery of 'reasonable' hospital or medical services"); Valdin v. Holteen and Nordstrom , 199 Or. 134, 147-48, 260 P.2d 504 (1953) (to claim economic damages, it would be necessary to offer evidence that the charges were reasonable); Coblentz v. Jaloff , 115 Or. 656, 665-66, 239 P. 825 (1925) (plaintiff's allegation of a certain amount for medical services, without evidence of payment or reasonableness, was insufficient to show that the charges were reasonable), overruled on other grounds by Simpson v. The Gray Line Co. , 226 Or. 71, 358 P.2d 516 (1961).
Although the amount of the expenses "may be an important factor in determining the reasonable value of those services[,]" White , 347 Or. at 243, 219 P.3d 566 (citation omitted), it is not enough, Lea , 194 Or. App. at 560, 96 P.3d 359. A trial court cannot rely on common sense to determine that the amounts are reasonable. McClelland , 278 Or. App. at 146, 372 P.3d 614. Rather, "[s]ome additional testimony or evidence is required[.]" Id. at 144, 372 P.3d 614. See also Ellington v. Garrow , 213 Or. App. 490, 496-97, 162 P.3d 328 (2007) (noting the "longstanding rule that a plaintiff seeking damages for personal injuries must establish the reasonableness of any medical expenses claimed as damages[,]" but holding that the plaintiff did so when a doctor testified to the reasonableness of physical therapy bills).[7]
*454 *29 Beyond those observations, we have had relatively few opportunities to consider what sort of evidence of medical expenses may show them to be "reasonable" within the meaning of economic damages. In particular, we have yet to address whether proof of payment by a health insurer-in this case, payment by a state-funded health insurer-may be some evidence of reasonableness, and, if so, whether such payment may present sufficient evidence. In State v. Jordan , 249 Or. App. 93, 96-98, 274 P.3d 289, rev. den. , 353 Or. 103, 295 P.3d 50 (2012), we declined to consider as plain error whether a private health insurer's lien ledger showing payments to treatment providers demonstrated reasonableness. We noted that a lien ledger is more than a mere list of medical bills because it also provides the amounts a health insurer paid and concluded that, "[a]t a minimum," the issue was "reasonably in dispute," given the fact that we had never addressed it. Id. at 98, 274 P.3d 289. The current case requires us to address such a question.
Previously, we have observed that the legislature enacted ORS 31.710 in light of the common law and that "[o]ur subsequent interpretation and application of the statute have been consistent with our preexisting treatment of economic damages for medical costs under the common law[.]" White , 219 Or. App. at 68, 182 P.3d 215. We have recognized that Oregon has applied a principle from the Restatement (Second) of Torts (1979) that reasonable medical expenses include "the value of the services reasonably made necessary by the harm." White , 219 Or. App. at 67, 182 P.3d 215 (citing Restatement § 924(c) comment f (emphasis omitted)). See also White , 347 Or. at 236, 219 P.3d 566 (citing that provision of the Restatement with approval); Nelsen v. Nelsen , 174 Or. App. 252, 258, 23 P.3d 424 (2001) ("We refer to specific comments contained in [the Restatement ] sections" when "they are persuasive and relevant to resolving the case before us." (Citation omitted.)).
*30 The Restatement explains that the "measure of recovery" for "the value of services rendered in an attempt to mitigate damages" is "the reasonable exchange value of the services at the time and place." Restatement § 911 comment h. "Exchange value," in turn, refers to "the amount of money for which the subject matter could be exchanged or procured if there is a market continually resorted to[.]" Restatement § 911. In short, the Restatement suggests that a victim seeking compensation for medical expenses is entitled to recover at the market rate for those services in that time and place.
The Restatement analysis regarding exchange value comports with other states' understanding of the common law at the time when the Oregon legislature enacted the original statute defining economic damages. See former ORS 18.560 (1987), renumbered as ORS 37.710 (2003) (providing present definitions of economic and noneconomic damages). Courts in other jurisdictions determined that reasonableness can be shown through proof that the charged or paid amount was the usual and customary rate for the medical services rendered. See, e.g. , Myers v. Karchmer , 313 S.W.2d 697, 707 (Mo. 1958), reh'g den. (despite a lack of direct testimony regarding the charges' reasonableness, evidence of the medical bills and their payments, along with testimony that they were paid at "the regular going rate," was sufficient for the jury to consider reasonableness); Sam v. Sullivan , 189 S.W.2d 69, 75 (Tex. Civ. App. 1945), writ den. (evidence that the amount was the usual and customary charge and that a physician approved the bill was sufficient to sustain a finding of reasonableness, even though no expert testified that such bills were reasonable). Given the prevalent understanding, it is likely that the legislature intended "reasonable charges" to include those charges incurred at or below the usual and customary rate.
We concur that the market rate is a reasonable amount for a victim to recover *455 for medical expenses. That concept is consistent with common law and the statute that is read to provide that "recoverable damages are based * * * on the value of necessary services." White , 219 Or. App. at 68, 182 P.3d 215 (emphasis in original). By definition, the market rate is the value ascribed to the services in a given market, and *31 the market rate is the burden a victim bears to receive care in that time and place. Consequently, the state can demonstrate the reasonable value of medical expenses by offering evidence that the medical expenses reflect the usual and customary rate for those services in the market wherein they occur. It follows that evidence that payments have been made and that those payments were at or below market value is one way to show the reasonableness of those expenses.[8]
Health insurers, although not hands-on providers of medical care, may be well situated to assess what sums are usual and customary and, therefore, reasonable, given their central role in negotiating group contracts for employees and employers, establishing payment rates with medical provider groups, and processing masses of individual claims in the modern market. See Lea , 194 Or. App. at 561, 96 P.3d 359 (noting that "a significant number of medical expenses today are paid by insurance companies and not individuals" in concluding that "a contemporary juror may be less capable of knowing what charges are reasonable than was a juror in 1912"); McClelland , 278 Or. App. at 146-47, 372 P.3d 614 (noting that the "finder of fact cannot be presumed to know what is a 'reasonable' charge for medical services based on their own experience and without further evidence, particularly given that many medical services are paid by third parties and insurance companies"); Jordan , 249 Or. App. at 98 n. 3, 274 P.3d 289 (noting an insurer's lien ledger was evidence of reasonableness above and beyond a mere medical bill, in part, because it was "at least possible to infer" that the insurer "was satisfied that the medical bills it paid were reasonable"); see also ORS 743B.001(10) (defining insurer); ORS 743B.001(14) (defining, as among health benefit plans, preferred provider organizations (PPO)); ORS 743B.001(8) (defining health benefit plan); ORS 743B.005(16) (defining health benefit plan); Cascade Physical Therapy v. Hartford Casualty Ins. , 258 Or. App. 612, 618, 310 P.3d 1156 (2013), rev. den. , 354 Or. 837, 325 P.3d 738 (2014) (contract between PPO health insurer limited the amount the medical provider could demand in payment). Therefore, the fact that a health insurer has paid *32 a medical bill is something more than evidence of a medical bill standing alone; it is some indication of the charge's reasonableness.
Applying those principles to the case at hand, we conclude that the record contained sufficient evidence upon which a factfinder could conclude that the requested restitution to CareOregon was reasonable. In addition to health insurance claim forms showing the amounts charged, a ledger showed the amounts paid. CareOregon's payments were a fraction of the total bills issued, and a witness explained that they were at or below the usual and customary rate for those services in that market. Specifically, the subrogation coordinator testified that CareOregon pays for medical expenses at state Medicaid rates, which are "much lower rates than * * * standard commercial insurance." Such evidence of payments at or below market rate sufficed to permit a factfinder to find that the amounts sought as medical expenses were reasonable.
Our conclusion is required for the added reason that the payments were made by a publicly funded health insurer who, by design, can only make payments at reasonable rates. CareOregon's payments are the product of an elaborate statutory and regulatory scheme for controlling Medicaid rates under state and federal law. Chapter 414 of the Oregon Revised Statutes governs the administration of Oregon's public medical assistance program, including contracts with coordinated care organizations (CCOs) like CareOregon.[9] In particular, *456 ORS 414.065(1)(a) requires the Oregon Health Authority to set "[r]easonable fees, charges, daily rates and global payments for meeting the costs of providing health services to an applicant or recipient[,]" as well as "[r]easonable fees for professional medical and dental services which may be based on usual and customary fees in the locality for similar services" (emphases added). In making those determinations, the Oregon Health Authority must consult with the Medicaid Advisory Committee whose members include, in part, a licensed physician, health care *33 providers, two members of health care consumer groups that include Medicaid recipients, and two Medicaid recipients. ORS 414.225 ; ORS 414.211. By legal mandate, the state's payment rates are intended to reflect the usual and customary fees at or below the local market rate, taking into account what doctors, consumers, and other stakeholders consider reasonable.[10]
Federal laws and regulations subject Oregon payment rates to additional oversight. Before Oregon can receive federal funding for its medical assistance program, the Centers for Medicare and Medicaid Services (CMS) must approve its payment rates, as well as its policies and methods for setting payment rates, for each service included in its Medicaid program. 42 CFR §§ 430.10 - 430.15 (2017) ; 42 CFR § 447.201 (2017). Federal funds are not available for state expenditures that exceed the amounts CMS approves in the state's rate-setting plan; it creates an upper limit. 42 CFR § 447.304 (2017). CMS also reviews and approves all of Oregon contracts with managed care organizations and requires that capitation rates-periodic payments to the contractors on behalf of health program beneficiaries-be actuarially sound. 42 CFR §§ 438.2 - 438.5 (2017). Contracts with organizations like CareOregon must be "developed in accordance with * * * generally accepted actuarial principles and practices" and "certified by an actuary[.]" 42 CFR § 438.4 (2017). In light of that scheme of state and federal laws for establishing and regulating payment of reasonable rates, evidence of payments from CareOregon, a Medicaid-funded healthcare provider, is sufficient evidence that the amounts sought are reasonable.[11]
Defendant resists our conclusion with several arguments. First, he likens this case to two cases in which the courts determined that the evidence was insufficient to present the question of reasonableness to the jury. Those cases, however, are distinguishable from the one before us. In Lea , the plaintiff introduced only evidence of charges.
*34 194 Or. App. at 559, 96 P.3d 359.[12] In Coblentz , the plaintiff merely alleged $ 321 in medical services, medicine, and bandages, but he offered no evidence that he paid it. 115 Or. at 665-66, 239 P. 825. In neither case did the plaintiff provide any evidence that the amounts charged were reasonable, such as proof regarding the going rate for such services. Here, the state provided more than an amount billed or even an amount that an individual had paid. In addition to claim forms showing the charges and a ledger showing the payments, the state provided testimony that CareOregon paid at government-regulated rates which were below that which was the standard.
Next, defendant argues that a medical professional must testify that the charges are reasonable in order to establish their reasonableness. Although we have acknowledged that "a plaintiff generally present[s] evidence of the reasonableness and necessity of medical expenses through testimony of physicians and other medical professionals familiar with the injury, treatment, *457 and costs involved[,]" White , 219 Or. App. at 68, 182 P.3d 215 (emphasis added), we have not held that to be the only permissible method. As noted above, the fact that a health insurer has paid a medical bill is some indication of the charge's reasonableness in the market.[13] In addition, here, there is evidence that the payments were made by a health insurer at or below market rates. In such circumstances, that evidence makes unnecessary a physician's testimony as to the reasonableness of the amount sought to be recovered.[14] *35 Finally, defendant asserts that, to establish reasonableness, the state must provide evidence during the restitution proceedings connecting each expense to a necessary treatment. Defendant argues that the state did not address whether there could have been alternatives providing "fewer, more conservative, or less costly treatments." Defendant's argument is unavailing for a pair of reasons. First, whether the charges are reasonable and whether the treatment is necessary are two distinct questions. See McClelland , 278 Or. App. at 146 n. 4, 372 P.3d 614 (even when the trial court correctly finds the medical services necessary, the statute "still requires proof that the charges for the hospital services were 'reasonable' "); White , 219 Or. App. at 67, 182 P.3d 215 (" 'Necessarily,' an adverb, modifies 'incurred' and reflects on the necessity of the treatment[.]"). Defendant's objection at the restitution hearing and during the trial court's ruling focused almost entirely on the reasonableness of the medical expenses, with no real challenge to their necessity. Second, the record contained evidence of the treatment's necessity-evidence that the trial court was free to consider-although some of it was admitted at trial and not the subsequent restitution hearing. McClelland , 278 Or. App. at 146, 372 P.3d 614 ("[E]vidence in support of a restitution award may be the evidence presented at trial, and does not have to be additional evidence presented following a post-trial investigation separate from the investigation of the crime itself." (Citing State v. Noble , 231 Or. App. 185, 189, 217 P.3d 1130 (2009) )).[15] *36 The dissenting opinion in this case resists our conclusion for reasons that are different than those defendant presents. The dissent supposes that witnesses who are treating physicians have "little knowledge of their own billing" and decries "overly formalistic, needlessly time-consuming" trial practice involving "billing experts" who "make the rounds of Oregon courts in personal injury cases." *458 296 Or. App. at 40, 42, 438 P.3d at 460, 461 (James, J., dissenting). That practice, however, was not involved in this case, and this decision does not compel that practice.
The dissent further contends that the evidence at issue in this case should be deemed insufficient to support a finding of reasonableness because, otherwise, insurers will be in "a superior position from which to dictate reasonableness," thereby "creat[ing] two different classes of litigants in Oregon courts." Id. at 44, 438 P.3d at 462. The dissent asserts that this is unfair because an uninsured victim would still need to call a billing expert to trial, whereas an insured victim or the victim's insurer could call someone like the subrogation coordinator here. In both situations, however, a witness testifies to show that the amounts were "reasonable" or, as shown here, were paid at or below market rates, which is the same thing. There is no inequality in that.
The dissent also objects that a hypothetical uninsured victim would not have an equal convenience because there would be no witness from an insurance company to say that the bills were paid or were paid at or below market rates. For reasons that are analytical and practical, that objection provides no basis to reach a different legal conclusion in this case.
The dissent's objection fails to differentiate between two distinct issues: access to evidence and the legal sufficiency of the evidence. This case examines whether the evidence presented below was sufficient to permit a reasonable factfinder to infer that the claimed medical expenses were reasonable. For the reasons stated, it is. However difficult it may be for an uninsured victim to access evidence of the reasonableness of medical expenses, the solution to that problem is not to deem legally sufficient evidence insufficient *37 to prove a point. Rather, the solution is to address the access-to-evidence problem directly, perhaps by doing what other states have done through their evidence codes. See, e.g. , Ind. Evid. R. 413 ("Statements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements are prima facie evidence that the charges are reasonable.")[16]
As a practical matter, the inequality perceived by the dissent is largely illusory, in view of two principles of law at play in civil cases. First, as mentioned above, the collateral source rule makes evidence of a victim's insurance benefits inadmissible at trial in a typical tort case. ORS 31.580(2).[17] One good reason is the risk that admission of evidence of payments by insurers in a civil case might tempt jurors mistakenly to lower their award of the victim's damages, thus shortchanging the victim.[18] Secondly, the victim-insured or uninsured -may well want to recover the full measure of medical bills-not just the lesser, insured portion. That is because the victim-insured or uninsured-is entitled to recover more damages (i.e. , including the medical providers' "write-offs"). See White , 347 Or. at 218, 219 P.3d 566 (allowing injured party to recover "write-offs"). Getting more does require the added effort to ask a treating physician, who may already be a witness on medical treatment, or a billing expert to testify that the bills themselves are reasonable. Although the process is not the same, the point is that, by asking a witness about reasonableness, the *459 victim recovers more . There is no real inequality in that. *38 In this case, the Oregon Health Plan, through CareOregon, provided payment of $ 46,403.04 at the Medicaid rate for the $ 262,006.83 billed. That payment freed the victim from further obligation to medical providers from the unpaid balance of the debt. See ORS 414.065(3) (OHP payments shall constitute payment in full for medical services). As noted, CareOregon is a nonprofit coordinated care organization. When and if it recoups any of its payments from an offender, it supports its ability to pay for medical services for the victim and others.
Ultimately, the dissent does address the issue presented by this case, disagreeing that the evidence presented is legally sufficient because the dissent reads the testimony of the subrogation coordinator to suggest that she "declined * * * to offer any opinion as to reasonableness." 296 Or. App. at 45, 438 P.3d at 462-63 (James, J., dissenting). When asked about "rates," which is to say the amounts charged, she said that the she did not evaluate the reasonableness of a particular charge. Instead, she explained that all charges were paid at the Medicaid rates that are "much lower rates" than standard insurance payments. When asked about "reasonableness of the services," which is to say the necessity of treatment, she replied that she did not generally evaluate that sort of reasonableness "unless there's some sort of question that would come up."
Contrary to the dissenting opinion, those answers do not mean "[w]e are left only with the fact that the medical bills were paid by an institutional insurer at a contracted rate." Id. at 47, 438 P.3d at 463. As we have explained, the testimony that the amounts sought-payments that were at or below market rates-is the definition of medical expenses that are reasonable in amount. Moreover, Medicaid payments can only be made at reasonable rates. The witness need not have used magic words when the substance of her testimony said the same thing. And, as we have explained, this record contained other evidence of the necessity of the medical bills. The victim's medical records from OHSU were received in evidence, and the trauma surgeon testified about the victim's injuries and medical treatment. Contrary to the dissenting opinion, the evidence in this record is legally sufficient under "our lenient standard of review." See *39 Ellington , 213 Or. App. at 496, 162 P.3d 328 (testimony allowed inference of reasonableness satisfying "our lenient standard of review").
Ellington provides a helpful comparison in that regard. There, the issue was whether the evidence was legally sufficient to support a finding that certain charges for physical therapy were reasonable. Id . at 492, 162 P.3d 328. The only evidence on the point was that a doctor had testified, in response to a question about the reasonableness of all the medical expenses that the plaintiff was seeking to recover, that "The PT seems a bit high. Beyond that the others appear reasonable." Id . at 493, 162 P.3d 328. Noting our deferential standard of review, we held that the testimony was sufficient to support a finding that the physical therapy charges were reasonable because a reasonable factfinder could construe that testimony to mean that the charges were "on the high end of reasonable, but still reasonable." Id. at 496-97, 162 P.3d 328. For that reason, the testimony provided the necessary "some evidence" that the amounts were reasonable beyond the bills themselves. The same is true in this case; the testimony provided permits the reasonable inference that the charges were paid below market rates such that the amounts sought to be recovered were reasonable or, perhaps, a bargain.
In conclusion, when proving economic damages for restitution, the state can establish that charges for medical services are reasonable by providing evidence that the charges reflect the usual and customary rates for those services in the market. Here, the state provided sufficient evidence of reasonableness when it showed that CareOregon, a publicly funded health insurer, made payments for medical expenses at state Medicaid rates that were "much lower" than "standard" rates, amounting to a fraction of the original charges. Therefore, the trial court was free to require restitution for the payments for medical expenses as a part of *460 its sentence upon a judgment of conviction for defendant's offenses.
Affirmed on appeal; reversed and remanded on cross-appeal.

The state also requested $ 695 for towing expenses, to which defendant raised no objection.

We do not understand defendant to dispute that these expenses resulted from the victim's injuries and treatment related to the crime. CareOregon's subrogation coordinator identified $ 568.22 in expenses arising from unrelated care, and the state accordingly subtracted that amount from the total restitution requested. During cross-examination, defendant suggested that the correct deduction was $ 967 but pursued the issue no further at the restitution hearing or on appeal.

Since the date of defendant's offense, the legislature amended ORS 137.103 and ORS 137.106. See Or. Laws 2015, ch. 9, §§ 1-2. Because these changes have no bearing on the current analysis, we cite the current versions of those statutes.

The only exception to economic damages applicable to restitution is future impairment of earning capacity. ORS 137.103(2)(a) ; State v. Jordan , 249 Or. App. 93, 96, 274 P.3d 289, rev. den. , 353 Or. 103, 295 P.3d 50 (2012).

However, as the Supreme Court noted, "recovery of economic damages" does not make "a restitution proceeding into a civil proceeding." Ramos , 358 Or. at 599 n. 11, 368 P.3d 446 (internal quotation marks omitted). Rather, "[r]estitution is a penalty that serves a penal purpose. * * * It is intended to serve a rehabilitative and deterrent purpose by causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim." Id. (citations and internal quotation marks omitted).

White v. Jubitz Corp. presented a related but separate issue. It involved restitution for medical expenses covered by Medicare. 347 Or. at 215, 219 P.3d 566. However, in that case, the Supreme Court addressed whether a plaintiff's "recovery must be limited to the amount that Medicare paid to [medical] providers." Id . The defendant had already stipulated to the expenses' reasonableness, and the Supreme Court had no reason to address the issue. Id. at 218, 219 P.3d 566.

The dissenting opinion criticizes the majority opinion for "evad[ing] the implications" of Valdin that evidence of payment alone is insufficient proof of reasonableness. 296 Or. App. at 43, 438 P.3d at 462 (James, J., dissenting). Whatever its "implications," Valdin makes no such holding.
In Valdin , the trial court had ruled inadmissible certain medical bills when they were not "the best evidence" nor within the "shop book" rule, but the trial court permitted, over objection, the plaintiff to testify to amounts of medical charges and further permitted one of his doctors to testify that the bills were reasonable. 199 Or. at 147, 260 P.2d 504. Although the defendant had stipulated to the reasonableness of the sums, the defendant assigned error to admission of the testimony about those sums. On appeal, the court held that the testimony was admissible, without admission of the bills themselves, given the stipulation. Id . at 149, 260 P.2d 504. The court explained that the plaintiff had a right to testify to his bills or to his payment of bills and that it would be necessary to show the amounts and services were reasonable. Id.
Although we and the Supreme Court have suggested that even payment of a bill may be insufficient to create an inference of reasonableness, we are not aware of any Oregon appellate cases squarely holding that. In this case, because there is evidence of reasonableness beyond payment, we need not address whether proof of payment alone can give rise to an inference of reasonableness.

Of course, a defendant is free to dispute that evidence, and, if disputed, the factfinder will ultimately decide whether the amount is reasonable.

CCOs are corporate structures or networks of providers organized through contractual relationships that provide Oregon's system of managed care. ORS 414.025 ; ORS 414.625 ; 42 CFR § 438.2 (2017).

Although the subrogation coordinator testified that individual services were not reviewed for reasonableness, that presents no issue because the expenses are all set to be paid at Medicaid rates.

As previously noted, a defendant is free to offer contrary evidence to create a dispute of fact for the factfinder to resolve.

We found, nonetheless, that the defendant's statements in closing arguments were admissions as to several charges and that those admissions cured or waived any failure to have stricken the plaintiff's claim for medical expenses. Id. at 561-63, 96 P.3d 359.

Although the current case does not warrant a close examination of them, we recognize that there are extensive laws and regulations governing the private health insurance market. See ORS chapter 731; OAR chapter 836; Division of Financial Regulation, Oregon Department of Consumer and Business Services, Annual Health Insurance Report (2018), https://dfr.oregon.gov/business/reg/reports-data/annual-health-insurance-report/Pages/index.aspx (accessed Nov. 12, 2018).

In the typical tort case, in which a plaintiff has sued a defendant seeking recovery of damages for physical injuries, the reasonable value of medical charges ordinarily is proved through the testimony of a physician or some sort of medical billing expert, and not through evidence of the rates at which insurance paid those charges. This stems from two legal principles. First, under Oregon law, a plaintiff is permitted "to claim and recover from [a] defendant the reasonable value of the medical expenses for which he was billed and which were necessary to treat [the plaintiff's] injuries" notwithstanding the fact that some of the expenses may have been paid by insurance or another third party. White , 347 Or. at 243, 219 P.3d 566. Second, Oregon's collateral source statute, ORS 31.580, makes evidence of the plaintiff's insurance benefits inadmissible at trial in such a tort case. Id . (discussing ORS 31.580(2) and rejecting the defendant's argument that it should be permitted to rely on evidence of Medicare payments for purpose of demonstrating reasonable value of medical services provided to the plaintiff). However, as observed, where evidence of payments for medical services is admissible, that evidence "often may be an important factor in determining the reasonable value of those services. See Oliver v. N. P. T. Co. , 3 Or. 84, 87 (1869) ('In estimating damages, it is proper to consider loss of time, money necessarily paid, or debts necessarily incurred in curing the bodily injury * * *.')." Id .

For instance, an OHSU trauma surgeon-who was responsible for the victim's emergency, operative, and immediate post-operative care-and two first responders testified to the victim's critical condition, the medical interventions, and the life-saving nature of his care. The state also proffered medical records, as well as health insurance claim forms and ledgers connecting expenses to particular services.

In that vein, we observe that, as best as we can tell, no appellate court has considered whether OEC 311(1)(L) gives rise to a similar presumption. It provides that there is an evidentiary presumption that "[p]rivate transactions have been fair and regular."

By its terms, ORS 31.580 bars the introduction of otherwise relevant evidence of collateral benefits only in civil actions. As a result, the legislature has not made its evidentiary restrictions applicable in the context of a restitution hearing.

The jury should not make such subtractions because, as the tort claims work out, providers' statutory medical liens and insurers' reimbursement claims may make such subtractions from a damages award eventually. See ORS 87.555 (liens for medical services); Sereboff v. Mid Atlantic Medical , 547 U.S. 356, 358-59, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006) (recognizing insurer's equitable reimbursement claim under federal law).