TOOKEY, J.
*405 Defendant appeals a judgment of conviction for assault in the third degree, ORS 163.165, which imposed a total of $84,046.58 in restitution against defendant. As a result of the underlying assault, the victim lost his right eye. In his sole assignment of error, defendant claims that the trial court erred in ordering restitution of $52,000 for the prosthetic eyes that the victim would need over the course of his lifetime because, according to defendant, the state failed to prove that that amount was reasonable. For the reasons that follow, we affirm.
The relevant facts are not in dispute. The case arises from a physical altercation between defendant and the victim. As a result of the altercation, the victim's right eye had to be removed and the victim was fitted with a custom prosthetic eye. The state charged defendant with, among other offenses, assault in the third degree, ORS 163.165. Defendant pleaded guilty to that offense, and the trial court dismissed the remaining charges.
The state sought restitution for the economic damages caused by defendant's assault and the trial court held a restitution hearing. During that hearing, defendant stipulated to restitution for the victim's hospital bills; emergency medical transportation; the prosthetic eye that the victim had already received, if the state could establish the cost of that prosthetic eye ; and various other medical expenses. Defendant, however, disputed $52,000 in restitution that the state was seeking on the victim's behalf to compensate the victim for the cost of prosthetic eyes over the course of the victim's lifetime.
The state, for its part, called the victim, who testified that (1) prosthetic eyes need to be replaced every "five or six years," (2) he did not know the cost of the prosthetic eye that he currently had, and (3) for the creation of the prosthetic eye that he currently had, he was required to "go [in] quite a few times," and measurements had to be taken so that molds could be made.
Additionally, the state called Renae Palmer, who works in victims' assistance at the *64 Harney County District *406 Attorney's Office. In that role, one of her duties is to "compile restitution figures for victims of crime." Palmer testified that, in this case, she "generate[d] a restitution figure" of $52,000 for the cost of prosthetic eyes over the course of the victim's lifetime. To arrive at that figure, Palmer contacted two providers of prosthetic eyes : (1) the "only place [the victim] would be able to get a prosthetic eye in Oregon" and (2) the out-of-state provider that had made the prosthetic eye that the victim had at the time of the restitution hearing. Each provider told Palmer that the cost of a prosthetic eye was $5,200. They also told Palmer that prosthetic eyes need to be replaced every "three to five years." Using the five-year figure, Palmer estimated that the victim, who was then 30 years old, would need to have 10 prosthetic eyes made as a result of the assault, resulting in a restitution figure of $52,000.
After the restitution hearing, the trial court issued a letter opinion imposing the disputed $52,000 in restitution. The letter opinion provides, in pertinent part:
"In this case ***, the victim[ ] was unable to identify the costs of prosthetic eyes. He did identify within a range of time how often his eye would need to be replaced. This meets the reasonable medical certainty standard of the need for prosthetic eyes.
"Renae Palmer, in her role as a victim advocate, testified she had contacted two different providers, noting there is only one in Oregon. Both were consistent in their costs for eyes at $5,200 per eye. This did not include other costs to polish the eye and ongoing check-ups.
"She also testified to a belief of a life expectancy for [the victim], a 30 year old male, of 80 years.
"This Court would rely, by judicial notice, on Social Security Actuarial Tables and find his life expectancy to be 77 years. Using the conservative estimate of 5 years for a new eye, the requested amount of restitution is medically reasonable."
On appeal, defendant contends that the "trial court erred when it ordered defendant to pay $52,000 in restitution for the cost of replacement prosthetic eyes over the course of the victim's lifetime" because the "state failed to *407 prove that that amount was reasonable." Defendant makes two principal arguments to support that contention.
First, defendant argues the state has to prove that charges for "medical and other health care services" are "reasonable" for such charges to be recoverable as restitution and notes that the "submission of a medical bill, without more, is insufficient proof to establish" that such charges are reasonable. Defendant further argues that Palmer's testimony regarding the cost of prosthetic eyes "provided no more information than a medical bill alone would provide."
Second, defendant argues that, "in the absence of testimony from a professional familiar with the injury, treatment, or costs involved in providing a custom prosthetic eye, the trial court, sitting as factfinder, could not be presumed to know the reasonableness of a charge for optical prosthetics services or the reasonableness of periodically replacing a prosthetic eye."
The state contends, among other points, that the record contained legally sufficient evidence to support the restitution award-viz. , "testimony from a person who is experienced in estimating such costs, and who contacted two potential providers, both of whom were consistent in the prices that they quoted."
We "review orders of restitution for errors of law." State v. McClelland , 278 Or. App. 138, 141, 372 P.3d 614, rev. den. , 360 Or. 423, 383 P.3d 862 (2016). " 'We are bound by the trial court's factual findings if they are supported by any evidence in the record[.]' " Id. (quoting State v. Pumphrey , 266 Or. App. 729, 730, 338 P.3d 819 (2014), rev. den. , 357 Or. 112, 346 P.3d 1212 (2015) (brackets in McClelland )).
"The process by which the state may seek to recover restitution against a criminal defendant and on behalf of a victim is set forth by statute." Id. at 141, 372 P.3d 614. ORS 137.106(1)(a) provides, in relevant part:
"When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate *65 and present to the court * * * evidence of the nature and amount of the damages. * * * If the court finds from the evidence presented that a victim suffered economic *408 damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."
Importantly, to be recoverable as restitution, medical expenses must be "reasonable in amount and necessarily incurred." State v. Herfurth , 283 Or. App. 149, 157, 388 P.3d 1104 (2016), rev. den. , 361 Or. 350, 393 P.3d 1176 (2017) (so noting with respect to economic damages recoverable as restitution generally); State v. Campbell , 296 Or. App. 22, 27, 438 P.3d 448 (2019) (noting "the state has to prove that the cost of [medical expenses are] reasonable before restitution can be awarded," and "recoverable damages are based on the value of necessary services" (internal quotation marks and emphasis omitted)); see also ORS 31.710(2) (defining "[e]conomic damages" as including "reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services"). The "submission of a hospital bill, without more, is insufficient proof for recovery of 'reasonable' hospital or medical services. Some additional testimony or evidence is required to support the reasonableness of the bill for the hospital or medical services." McClelland , 278 Or. App. at 144, 372 P.3d 614.
Recently, in Campbell , in the context of a request for restitution, we explained that the "market rate is a reasonable amount for a victim to recover for medical expenses." 296 Or. App. at 30, 438 P.3d 448. The "market rate is the value ascribed to the services in a given market, and the market rate is the burden a victim bears to receive care in that time and place." Id . at 30-31, 438 P.3d 448. Consequently, in a restitution proceeding, "the state can demonstrate the reasonable value of medical expenses by offering evidence that the medical expenses reflect the usual and customary rate for those services in the market wherein they occur." Id. at 31, 438 P.3d 448.
Applying those principals in the case at hand, we conclude that the record contained legally sufficient evidence for the trial court to determine that $52,000 in restitution constituted necessary and reasonable medical expenses in this case.
*409 First, regarding the need for the victim to replace his prosthetic eye every five years, the state presented evidence, via testimony from the victim, that the victim's prosthetic eye would need to be replaced every five to six years. The state also presented evidence, via testimony from Palmer, who had spoken with two providers of prosthetic eyes, that prosthetic eyes need to be replaced every three to five years. That evidence was legally sufficient to permit the trial court to determine that it would be necessary for the victim to have his prosthetic eye replaced every five years.
Second, regarding the cost to fabricate a custom prosthetic eye, in this case, the state presented evidence that the only prosthetic eye provider in Oregon charged $5,200 for that service. The state also presented evidence that that same price was charged by an out-of-state provider of prosthetic eyes. That evidence was legally sufficient to permit the trial court to determine that $5,200 reflected the usual and customary rate for the fabrication of a custom prosthetic eye and, consequently, that $5,200 is a reasonable charge to have a custom prosthetic eye made. See Campbell , 296 Or. App. at 39, 438 P.3d 448 (the "state can establish that charges for medical services are reasonable by providing evidence that the charges reflect the usual and customary rates for those services in the market").
Defendant's arguments to the contrary are not persuasive. First, defendant contends that Palmer's testimony in this case "provided no more information than a medical bill alone would provide." Palmer received a quote of $5,200 per prosthetic eye from two different providers of prosthetic eyes, including the sole provider in Oregon. That is evidence with "more information than a medical bill alone would provide," and is sufficient to support the trial court's determination *66 that $5,200 is a reasonable charge to have a custom prosthetic eye made.
Second, defendant argues that "in the absence of testimony from a professional familiar with the injury, treatment, or costs involved in providing a custom prosthetic eye, the trial court, sitting as factfinder, could not be presumed to know the reasonableness of a charge for optical prosthetics services or the reasonableness of periodically replacing *410 a prosthetic eye." "Although we have acknowledged that a plaintiff generally presents evidence of the reasonableness and necessity of medical expenses through testimony of physicians and other medical professionals familiar with the injury, treatment, and costs involved, we have not held that to be the only permissible method." Campbell , 296 Or. App. at 34, 438 P.3d 448 (internal quotation marks, citation, and brackets omitted). As noted above, Palmer's testimony, as well as that of the victim, provided the trial court with sufficient evidence to determine that it would be necessary for the victim to have his prosthetic eye replaced every five years. In addition, as noted above, evidence that two providers of prosthetic eyes-including the sole provider in Oregon-charge $5,200 to fabricate a custom prosthetic eye, was legally sufficient to permit the trial court to determine that $5,200 is a reasonable charge to have a custom prosthetic eye made.
In sum, for the reasons stated above, we conclude that the trial court did not err in imposing the challenged $52,000 in restitution.
Affirmed.