Submitted December 3, 2019; amended supplemental judgment reversed in part, remanded for resentencing, otherwise affirmed July 14, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PATRICK RAYMOND FOX,
*Defendant-Appellant.*

Jackson County Circuit Court
17CR07694; A167616

496 P3d 10

Defendant appeals from an amended supplemental judgment imposing $11,305.28 in restitution to cover the victims' medical expenses and their attorney fees, following defendant's convictions for second-degree assault, ORS 163.175, and third-degree assault, ORS 163.165. In challenging the restitution award, defendant contends that the state failed to establish that the medical expenses were reasonable and necessarily incurred and that the attorney fees were reasonably foreseeable and necessary. *Held*: The state presented sufficient evidence to establish that the medical expenses as to one of the victims, J, were both reasonable and necessarily incurred. The state, however, failed to present sufficient evidence to establish that the medical expenses as to a separate victim, M, were reasonable. As to the attorney fees, the trial court did not err in awarding restitution to the victims for the legal services directly related to the criminal case.

Amended supplemental judgment reversed in part; remanded for resentencing; otherwise affirmed.

Timothy Barnack, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Hannah K. Hoffman, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and Powers, Judge, and Sercombe, Senior Judge.

POWERS, J.

Amended supplemental judgment reversed in part; remanded for resentencing; otherwise affirmed.

**POWERS, J.**

In this criminal case, defendant appeals from an amended supplemental judgment imposing $11,305.28 in restitution ($8,105.28 to cover the victims' medical expenses and $3,200.00 to cover their attorney fees), following his convictions for second-degree assault, ORS 163.175, and third-degree assault, ORS 163.165. Defendant challenges the award of restitution, contending that the state failed to establish that the medical expenses were reasonable and necessarily incurred and that the attorney fees were reasonably foreseeable and necessary. For the reasons explained here, we reverse, in part, and remand for resentencing.

We review orders of restitution for errors of law and we are bound by the trial court's factual findings if there is any evidence in the record to support them. *State v. McClelland*, 278 Or App 138, 141, 372 P3d 614, *rev den*, 360 Or 423 (2016).

Defendant caused physical injury to his neighbors—a married couple, M and J—by striking them with a metal chain. Both victims were transported to the hospital via an ambulance flight and received medical treatment. Defendant pleaded guilty to both assaults, and the state sought restitution for the victims' medical expenses and the victims' attorney fees.

At the restitution hearing, the state asked that defendant be ordered to pay $4,759.02 in restitution to the Crime Victim Services Division (CVSD), for medical and hospital expenses incurred by the victims. In support of that amount, the state called Shaw, the manager of the compensation and revenue collection program at CVSD. Shaw testified that CVSD reimbursed M $300.00 for the copays that he paid that insurance did not cover. As to J's expenses, Shaw explained that CVSD paid her hospital bills which, because she was uninsured, had been reduced by the workers' compensation fee schedule. Shaw testified to how much J's medical bills originally were and how much they were reduced to pursuant to the workers' compensation fee schedule: hospital bill was $6,848.00, CVSD paid $2,273.80; ambulance bill was $1,328.00, CVSD paid $996.00; and a radiology bill

was \$492.00, CVSD paid \$433.00. CVSD also paid \$726.22 for J's follow-up care with her primary care physician. The state also asked Shaw to explain how CVSD confirmed that J's medical bills were related to the criminal incident:

"Q [by the prosecutor:]  And these were all related to the injuries [J] sustained in the *State versus Fox* case?

"A [Shaw:]  That is correct. When we accept an application for compensation, we do not pay bills until we have the actual bill. If insurance is involved, the explanation of benefits. And then we also have to have the medical chart notes so that we can review to ensure that they are directly related to the criminal incident."

The state also asked that defendant be ordered to pay \$3,346.26 in restitution to M's health insurance company, Regence Blue Cross Blue Shield of Oregon (Blue Cross), for medical expenses related to his injury. The state called Brown, a representative from Blue Cross, to testify about what charges Blue Cross paid on M's behalf. Brown testified that Blue Cross paid the ambulance air flight charge, emergency-care charges, and M's follow-up appointment charge. Brown did not, however, provide a breakdown of the costs for each service. In addition to testimony from CVSD and Blue Cross, the state also called both victims to testify about the extent of their injuries.

Finally, the state sought restitution for the victims' attorney fees that the couple incurred when they hired a private attorney to assist them and guide them through the criminal case. Prior to the criminal assaults, defendant and the victims had been involved in a property dispute. The victims had retained an attorney with a private civil practice, Naumes, to represent them for that dispute. When the criminal case arose, the victims retained Naumes to represent their interests in the criminal proceeding because "they want[ed] somebody who they trusted to advise them in the criminal case." The state submitted an invoice of the services Naumes rendered and called Naumes to testify. Naumes testified that she made various appearances in court directly related to the criminal case, drafted a motion to quash a subpoena, took pictures of defendant's property after defendant expressed concerns that the victims were

"going over to his property and stealing his stuff," assisted in other property-related issues, represented the victims in settlement negotiations, and spoke on behalf of the victims at defendant's sentencing hearing.

Defendant objected to the imposition of restitution. As to the victims' medical expenses, defendant argued that the state failed to present "testimony that the medical services were reasonable and necessary." Defendant argued that, under the reasoning articulated in *McClelland*, medical bills alone are not sufficient, and that, the testimony from CVSD and Blue Cross was akin to merely providing a medical bill, because neither of the witnesses were medical professionals and neither "testified that these services or expenses were reasonable or necessary." The state asserted that the victims testified about the extent of their injuries and confirmed that they followed the treatment plan recommended by their doctors.

With regard to paying restitution for the victims' attorney fees, defendant argued that the fees in this case were neither reasonably foreseeable nor necessarily incurred as outlined in *State v. Herfurth*, 283 Or App 149, 388 P3d 1104 (2016), *rev den*, 361 Or 350 (2017). In particular, defendant asserted that it was not reasonably foreseeable for the victims to hire a civil attorney to assist them with aspects of a criminal case when there are people in the district attorney's office whose job it is to assist crime victims. Defendant argued that there are "victim advocates in the district attorney's office to do exactly what [the victims'] attorney did for them." In response, the state argued that under *State v. Ramos*, 358 Or 581, 368 P3d 446 (2016), *State v. Gerhardt*, 360 Or 629, 385 P3d 1049 (2016), and *Herfurth*, the allowance of attorney fees for this type of case was "pretty broad."

The trial court agreed with the state's position. With regard to restitution to Blue Cross, the court concluded that the amount sought was reasonable:

"So on the reasonable fee for the amount being paid, it's an insurance company, Blue Cross and Blue Shield, it's a well reputable, established insurance company; so I can make a reasonable inference that whatever they charge was

reasonable for insurance companies, and they're within the guidelines because they are regulated by the government."

The court did not make any specific findings as to the reasonableness of the restitution amount to CVSD.

Given the nature of the victims' injuries, the court concluded that their incurred medical expenses were necessary:

"When you go to the hospital in an ambulance, they're going to do certain things regardless of what you say or do. That's just the way hospitals work.

"*** They're going to say, no, we need to check you out. We need to do a CAT scan on you. You got hit in the head; we don't care what you say, we've got to do it, because we've got liability ***. So for them it's necessary."

Additionally, the court found the victims' testimony to be credible and concluded that their testimony supported a finding that the expenses were necessary:

"So the medical bills, I believe you can testify as to *** [whether the medical bills were necessary] and them having to follow through. They didn't have a choice, for the purpose of the record, when they went to the hospital. But for the defendant's actions, they didn't have a choice but to go to the hospital and they didn't have a choice but to go through all those procedures which they testified to."

Finally, the court also imposed restitution to cover the victims' attorney fees for the services related to the criminal case; however, the court declined to award fees for services related to the property dispute (with the exception of one, which we discuss below).

On appeal, defendant renews the arguments that he made to the trial court. The state remonstrates that the victims' medical expenses were reasonable and necessarily incurred. With respect to whether the expenses were reasonable, the state asserts that this case is controlled by *State v. Campbell*, 296 Or App 22, 438 P3d 448 (2019), *rev'd on other grounds*, 366 Or 825, 470 P3d 369 (2020), and that payment from either a state-funded insurer or a private insurer is sufficient to show reasonableness. The state also asserts that given the nature of the victims' injuries, the trial court

could infer that the expenses they incurred (*e.g.*, ambulance ride, emergency room treatment, diagnostic imaging) were "medically appropriate," and thus, necessarily incurred. Finally, the state renews the arguments made to the trial court regarding the award of attorney fees as restitution. We address each of the arguments in turn.

## I.   MEDICAL EXPENSES

Under ORS 137.106(1)(a), "the state may seek to recover restitution against a criminal defendant and on behalf of a victim." *McClelland*, 278 Or App at 141. ORS 137.106(1)(a) provides, in part:

> "When a person is convicted of a crime, or a violation as described in ORS 153.008, that has resulted in economic damages, the district attorney shall investigate and present to the court *** evidence of the nature and amount of the damages. *** If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

As the Supreme Court recently explained, restitution is statutorily required when three conditions are satisfied: (1) the defendant has been convicted of criminal activity; (2) the victim suffered economic damages; and (3) there exists a causal relationship between the defendant's criminal activity and the economic damages. *State v. Aguirre-Rodriguez*, 367 Or 614, 620-21, 482 P3d 62 (2021). Medical expenses are recoverable as restitution if they are reasonable in amount and necessarily incurred. *State v. Perdew*, 304 Or App 524, 525, 467 P3d 70 (2020); *see also* ORS 31.710(2)(a) (defining economic damages to include "reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services"). The burden is on the state to present sufficient evidence to support a finding of reasonableness and necessity. *See Perdew*, 304 Or App at 526 ("As to both reasonableness and necessity, the state must present evidence sufficient to support a finding, rather than relying on a presumption of reasonableness or necessity.").

A medical expense is reasonable "if it is at (or below) the market rate for the services, drugs, or other medical items provided[.]" *State v. Workman*, 300 Or App 622, 623, 455 P3d 566 (2019). That is because, "[b]y definition, the market rate is the value ascribed to the services in a given market, and the market rate is the burden a victim bears to receive care in that time and place." *Campbell*, 296 Or App at 30-31. A trial court cannot rely on medical bills alone to establish that a medical expense is at the market rate; rather, "[s]ome additional testimony or evidence is required to support the reasonableness of the bill for the hospital or medical services." *McClelland*, 278 Or App at 144. Similarly, a trial court cannot rely on "common sense" alone to conclude a medical charge is reasonable. *See id.* at 146-47 ("The finder of fact cannot be presumed to know what is a 'reasonable' charge for medical services based on their own experience and without further evidence, particularly given that many medical services are paid by third parties and insurance companies.").

Whether treatment is necessary is a distinct question from whether charges are reasonable. *See State v. Dickinson*, 298 Or App 679, 682, 448 P3d 694 (2019) ("Evidence of one does not necessarily establish the other."). A trial court "cannot presume that medical or hospital services provided to a crime victim were necessary, merely by virtue of the fact that they were provided, because such a presumption would be inconsistent" with ORS 137.103(2). *Id.* at 684. Rather, the state must present "'some evidence' of necessity." *Perdew*, 304 Or App at 528 (emphasis omitted) (quoting *State v. Jordan*, 249 Or App 93, 100, 274 P3d 289, *rev den*, 353 Or 103 (2012)). As we recently explained in *Dickinson*, there may be cases where a trial court may rely on "common sense or common knowledge alone to determine the necessity of the services." 298 Or App at 684. That is, the necessity of a particular medical service "may be so obvious in some situations as to allow for reliance on common knowledge alone." *Id.* at 684 n 5. Illustrating the point, we explained:

> "For example, we doubt that it would require much evidence, let alone expert evidence, to establish that the expense of a tourniquet was necessarily incurred to stem the bleeding of a severed limb, or that the expense of an ambulance ride

was necessarily incurred to transport a severely injured victim to the hospital."

*Id.*

A.   *Restitution to CVSD*

Here, the evidence is sufficient to support a finding that the medical charges paid by CVSD on behalf of J were reasonable and necessarily incurred. In *Workman*, we addressed whether testimony from a representative of CVSD—the same witness that testified in this case—was sufficient to establish that the charges were reasonable. 300 Or App at 624. In that case, Shaw similarly testified as to how CVSD reviews a victim's medical bills and, more specifically, how they pay medical charges in accordance with the workers' compensation fee schedules when a victim is uninsured. *Id.* We concluded that, given the governing statutory requirements, "it can be inferred that workers' compensation fee schedules reflect customary market rates for medical services." *Id.* at 625 (citing ORS 656.248(1)). We do not deviate from the analysis in *Workman* and likewise conclude that Shaw's testimony in this case was sufficient to establish that the medical expenses paid by CVSD on behalf of J were at or below the market rate and, therefore, reasonable.[1]

Further, although Shaw is not a medical professional, we conclude that her testimony, along with the nature of J's injuries, provided some evidence for the trial court to conclude that her medical expenses were necessary. *See Campbell*, 296 Or App at 34 ("Although we have acknowledged that a plaintiff generally presents evidence of the reasonableness and necessity of medical expenses through testimony of physicians and other medical professionals familiar with the injury, treatment, and costs involved, we have not held that to be the only permissible method." (Brackets, internal quotation marks, and citation omitted.)). As *Dickinson* suggests, some medical expenses may be so "obviously necessary" as to allow a court to rely on common

---

[1] Although the trial court did not make a reasonableness finding specific to CVSD, because there is evidence in the record to support that finding, "we will presume that the trial court [made that finding] in a manner consistent with its ultimate conclusion." *State v. Ready*, 148 Or App 149, 153-54, 939 P2d 117, *rev den*, 326 Or 68 (1997).

sense or common knowledge. 298 Or App at 684. Here, defendant hit J with a metal chain. Given that circumstance, the court could rely on common sense to conclude that it was necessary for J to be transported by ambulance to the hospital to receive medical treatment such as x-rays and a CT scan to determine the extent of her injuries and that she would need follow-up care. Shaw's testimony outlined each of those services and identified the charges associated with each service. Therefore, because the state presented some evidence that the medical expenses for J were necessarily incurred, the trial court did not err in awarding restitution to CVSD for those expenses.

Finally, the state also sought restitution for the amount CVSD reimbursed to M to cover his copays for his medical and hospital services. However, because the state failed to establish that the $300 amount was reasonable, we conclude that the trial court erred in awarding restitution to CVSD for that expense.

B. *Restitution to Blue Cross*

Unlike the evidence supporting J's medical expenses, the evidence of M's medical expenses paid for by Blue Cross, which was presented through Brown's testimony, was not sufficient to establish that the expenses were reasonable. Although Brown testified that Blue Cross paid for M's ambulance flight, facility charges, and a follow-up appointment, Brown did not provide a breakdown of the cost of each service. Brown testified that Blue Cross paid $3,346.26 in total but did not elaborate on how the amounts paid correspond to customary market rates. Without more information, the trial court cannot conclude that the medical expenses were at or below the market rate and, therefore, reasonable. *See State v. Hilburn*, 301 Or App 48, 49-50, 455 P3d 995 (2019) (noting that, although the state called witnesses to testify about the payments they made for medical expenses, "the state elicited no testimony addressing how the amounts paid related to the customary market rates" and ultimately concluding that the state failed to prove that the medical expenses it was seeking in restitution were reasonable); *see also State v. J. M. E.*, 299 Or App 483, 489, 451 P3d 1018 (2019) (concluding that, without any evidence as to the

reasonableness of a hospital bill paid by CVSD or other persuasive argument regarding CVSD's duty to pay only a reasonable medical bill, the juvenile court erred in awarding restitution). Because the state failed to establish that the charges for M's medical expenses were reasonable, we need not address whether they were necessarily incurred.

## II. ATTORNEY FEES

As noted above, defendant also challenges the award of restitution to the victims for their attorney fees. Attorney fees and litigation costs that a victim incurs in connection with an underlying criminal prosecution may be recoverable in a restitution proceeding. *Ramos*, 358 Or at 604. In order to recover attorney fees as restitution, "they must be reasonably foreseeable" and "they must be reasonable in amount and necessarily incurred." *Herfurth*, 283 Or App at 157. Defendant does not challenge the reasonableness of Naumes's fees; instead, defendant asserts that Naumes's fees were not reasonably foreseeable or necessarily incurred. The test for determining whether fees are reasonably foreseeable is "whether a reasonable person in the defendant's position would have foreseen that someone in the victim's position could reasonably incur damages of the same general kind that the victim incurred." *Ramos*, 358 Or at 597.

Although defendant argues otherwise, it is reasonably foreseeable that a victim would hire an attorney to advise them about their rights in a criminal case. Under Article I, section 42(1)(d), of the Oregon Constitution, victims have the "right to receive prompt restitution from the convicted criminal who caused the victim's loss or injury[.]" However, "the right to restitution protected by Article I, section 42, does not encompass a *right* to have a prosecuting attorney assist in the recovery of restitution. Rather, the participation of the prosecuting attorney is discretionary[.]" *State v. Lynch*, 305 Or App 122, 130, 469 P3d 800 (2020) (emphasis in original). Thus, because the prosecutor does not represent a victim, it is reasonably foreseeable that victims would seek their own legal counsel to provide advice during criminal proceedings, including the restitution-related proceedings. Here, the victims retained an attorney

who provided services directly related to the criminal case. Specifically, Naumes worked on a motion to quash an overly broad subpoena, she represented the victims in settlement negotiations, and she spoke on behalf of the victims at sentencing. Further, although some of those services may be duplicated by the district attorney's office, we conclude that, because a victim is entitled to seek separate representation, the services provided by Naumes that were directly related to the criminal case were necessarily incurred by the victims.

We do note, however, that "not all attorney fees that a victim incurs in connection with a criminal proceeding are recoverable as restitution." *Herfurth*, 283 Or App at 156. The incurred fees "must result from the defendant's criminal activities." *Id*. As such, defendant's argument that the charge for Naumes taking pictures of defendant's property was not necessarily incurred is well taken. Defendant was convicted of assault; therefore, any services related to the property dispute between defendant and the victims are too removed from the criminal case. The trial court erred in awarding restitution for those fees.

Accordingly, we reverse and remand the amended supplemental judgment for recalculation of the proper amount of restitution consistent with this opinion.

Amended supplemental judgment reversed in part; remanded for resentencing; otherwise affirmed.