Argued and submitted December 17, 2020, affirmed October 13, 2021, petition for review allowed February 3, 2022 (369 Or 211)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN OLAF HALVORSON,
*Defendant-Appellant.*

Multnomah County Circuit Court
16CR27788; A169687

500 P3d 35

Defendant appeals a judgment of conviction for two counts of identity theft and one count of first-degree forgery. On appeal, defendant contends that the trial court erred (1) by not dismissing the case on the ground of double jeopardy because the criminal proceedings related to the same conduct for which he was already found in contempt of court; (2) by denying his motion for judgment of acquittal on one of the two counts of identity theft; (3) by failing to merge each guilty verdict on the identify-theft counts with the guilty verdict on the forgery count; and (4) by awarding restitution to the victims for various attorney fees incurred as a result of defendant's criminal conduct on the grounds that those fees were speculative, not reasonably foreseeable, nor necessarily incurred because the victim's attorney did much of the same work that the state would typically do and attorney billing was not specific. *Held*: The trial court did not err. The Court of Appeals rejected without discussion the claims of error relating to merger and denial of the motion for a judgment of acquittal. As for the motion to dismiss, the contempt proceedings did not cross the line from civil to criminal such that jeopardy attached, so the trial court correctly denied defendant's motion. Defendant's arguments demonstrated no error in the award of restitution.

Affirmed.

Eric L. Dahlin, Judge.

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. On the brief were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah Laidlaw, Deputy Public Defender, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Affirmed.

**LAGESEN, P. J.**

As his marriage dissolved, defendant became embroiled in three civil cases about the extent of defendant's ownership interests in the business belonging to the family of his ex-wife, G. To gain strategic advantage in that litigation, defendant faked a prenuptial agreement indicating that he owned some of the property in dispute and then forged the signatures of his ex-wife and a purported witness to the prenuptial agreement. Then, in pursuit of that strategy, he lied about the fake agreement in a deposition when confronted about the forgery. No one was fooled, and the ruse fell apart.

That, in turn, led to contempt proceedings in the civil cases. It also prompted this criminal case, in which defendant was convicted of two counts of identity theft and one count of first-degree forgery. On appeal, defendant contends that the trial court erred (1) by not dismissing the case on the ground of double jeopardy; (2) by denying his motion for judgment of acquittal on one of the two counts of identity theft; (3) by failing to merge each guilty verdict on the identify-theft counts with the guilty verdict on the forgery count; and (4) by awarding restitution to his ex-wife and her brother for various attorney fees incurred as a result of defendant's criminal conduct. Seeing no error, we affirm.

Defendant and G got married in 2005. Before and during their marriage, defendant worked for some of G's family's companies, some of them owned by G and G's brother, R. Around the time defendant and G divorced, a dispute arose between defendant, G, and R concerning the extent of defendant's ownership interest, if any, in some of the companies. The parties turned to civil litigation to resolve the dispute.

During discovery, defendant crafted an "amended" prenuptial agreement. Its terms indicated that defendant owned properties at issue in the civil litigation. He forged G's signature on it, and also forged the signature of an ostensible witness to the agreement. Defendant gave the document to his attorney, and defendant's attorney produced it to G's attorney, who was not fooled for long. During defendant's

deposition, G's attorneys confronted him about the forged prenuptial agreement. Under oath, defendant denied that it was fake. About a month later, however, defendant's attorneys submitted corrections to his deposition transcript. Included in the "corrections" were revisions to his testimony about the "amended" prenuptial agreement. Specifically, defendant admitted creating the document himself and that doing so had been a "mistake."

The lawyers in the civil cases then moved for an order directing defendant to show cause why he should not be held in remedial contempt for his conduct. The court issued the order. Following a hearing, the court dismissed defendant's claims in the various cases as a sanction for the conduct. In one of the cases, it also ruled that defendant's divorce-related defense was barred. It did not bar defendant's defenses in the other cases, concluding that the cases had not been compromised by the forgery. The court also imposed more than $750,000 in attorney fees and costs.

The state initiated this criminal proceeding against defendant. Defendant moved to dismiss on the ground that the prior contempt proceeding meant that this criminal prosecution was barred by the double-jeopardy provisions of the state and federal constitutions. The trial court denied the motion to dismiss, and defendant proceeded to a court trial. The court denied motions for judgment of acquittal on all counts and ultimately found defendant guilty of two counts of identity theft and one count of forgery. The court rejected defendant's contention that the verdicts on the identity-theft counts should merge with the verdict on the forgery count.

The state then sought a total of $918,934.14 in restitution. The court awarded $279,825.25—$218,498.99 to G and $61,326.26 to R based on the losses they incurred that the court determined were caused by defendant's forgery. In coming to that figure, the court identified nine categories that were at issue for the purpose of restitution and ruled on whether each category was compensable and, if so, to what extent. The categories and their compensability status are as follows:

"1) Discovery of, and proving, the forgery. COMPENSABLE.

"2)   Amounts incurred seeking to remedy the contempt *** . COMPENSABLE—BUT just those portions for remedying the contempt, not the portions seeking affirmative relief for dismissing Defendant's claims and defenses.

"3)   Representation of the victim at hearings and at trial. COMPENSABLE.

"4)   Witness preparation. COMPENSABLE.

"5)   'Pure law' category—e.g. drafting legal memos on double jeopardy and other legal issues. **NOT** COMPENSABLE.

"6)   Other assistance to the state/testimony of attorney witnesses. **NOT** COMPENSABLE.

"7)   Victim speedy trial rights and other constitutional rights asserted directly by the victim. COMPENSABLE.

"8)   Costs of collecting on, and protecting, the judgment entered *** in the contempt case. **NOT** COMPENSABLE.

"9)   Advice to victim via attorneys talking to each other. COMPENSABLE."

(Uppercase, underscoring, and boldface in original.) The first two categories addressed attorney fees incurred by the victims outside of the criminal case as a result of defendant's forgery. The remaining categories addressed fees incurred by the victims in connection with the criminal proceeding. Defendant did not contest awarding restitution to G in the amounts of $12,000 in expenses for proving forgery and $28,200 for G's representation at trial and in hearings, but he contested the award to G of amounts in excess of those amounts in those categories, and contested the rest of the award.

On appeal, defendant assigns error to the trial court's denial of his motion to dismiss on the ground of double jeopardy; the denial of his motions for judgment of acquittal on one of the identity-theft counts and the forgery count; and the court's failure to merge the guilty verdicts on the identity thefts with the guilty verdict on the forgery.

Defendant also contends that the restitution awards were erroneous in multiple respects. In particular, defendant contends that the trial court erred in imposing the following restitution awards: $14,967.50 to G for attorney

fees for discovering and proving forgery, $8,188.00 to R for attorney fees for discovering and proving forgery, $51,303.62 to G for attorney fees for prosecuting the contempt violation, $53,138.26 to R for attorney fees for prosecuting the contempt violation, $53,657.71 to G for attorney fees for representing G as the victim at hearings and at the trial, $11,070.66 to G for attorney fees for witness preparation, $66,169.00 to G for attorney fees for pursuing her constitutional rights as a victim, and $21,330.50 to G for attorney fees for advice to her as a victim. Defendant mainly argues that those restitution awards were not reasonably foreseeable or necessary because G hired attorneys to support the state's criminal prosecution—an expense typically borne by the state—and that the trial court's award amount was not objectively verifiable. The state responds that none of the awards was improperly imposed.

At the outset, we reject defendant's contentions that the trial court erred by denying his motions for judgment of acquittal and by declining to merge the guilty verdicts. We turn to the denial of his motion to dismiss on the ground of double jeopardy, and his challenges to the restitution award.

*Jeopardy.* Article I, section 12, of the Oregon Constitution provides that a person cannot be prosecuted more than once for the same crime: "No person shall be put in jeopardy twice for the same offence." With slightly more awkward syntax, the Fifth Amendment to the United States Constitution affords a person similar protection against reprosecution: "No person shall *** be subject for the same offense to be twice put in jeopardy of life or limb[.]" Although defendant had not previously been criminally prosecuted for the conduct that led to his convictions in this matter, he asserts, in essence, that the contempt proceedings were enough like a criminal case that both constitutions bar this prosecution. That means, according to defendant, that the trial court erred when it denied his motion to dismiss the indictment.

Our review is for legal error. *State v. Worth*, 274 Or App 1, 8, 360 P3d 536 (2015), *rev den*, 359 Or 667 (2016). Whether "an ostensibly civil proceeding" is of criminal character so as to trigger "jeopardy" under Article I, section 12,

depends first on whether the legislature intended to create a civil proceeding, and, if so, whether any of four factors indicate that it is nonetheless criminal in nature. *State v. Selness/Miller*, 334 Or 515, 536, 54 P3d 1025 (2002) (if the legislature intended to create a criminal proceeding then, of course, jeopardy applies). Those factors are:

> "(1) the use of pretrial procedures that are associated with the criminal law, such as indictment, arrest, and detention; (2) the potential for imposition of a penalty that is historically criminal or 'infamous,' or that cannot be justified fully in terms of the civil purposes that the penalty supposedly serves; and (3) the potential for a judgment or penalty that carries public stigma; (4) the potential for collateral consequences that, either taken by themselves or added to the direct consequences of the underlying forbidden acts, amount to criminal penalties."

*Id*.

Whether an ostensibly civil proceeding trips the Fifth Amendment's jeopardy provision depends, much like it does under Article I, section 12, on whether the legislature intended to create a civil remedy or criminal sanction and, if the former, whether the legislative scheme is "so punitive either in purpose or effect *** as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson v. United States*, 522 US 93, 99, 118 S Ct 488, 139 L Ed 2d 450 (1997) (internal quotation marks and citation omitted). Seven factors govern the second inquiry:

> "(1) Whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may be rationally connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned."

*Id*. at 99-100 (alteration in original; internal quotation marks omitted). When evaluated under those factors, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy

into a criminal penalty." *Id*. at 100 (internal quotation marks omitted).

We have considered the contempt proceedings at issue under the standards set by *Selness* and *Hudson*, and the parties' arguments about the application of those standards, to those proceedings. In the end, we agree with the trial court that the *Selness* factors and the *Hudson* factors lead to the conclusion that these contempt proceedings did not cross the line from civil to criminal. In a nutshell, the sanctions imposed—dismissals of claims and defenses and attorney fees—were of the type commonly imposed for serious litigation misconduct. Although the contempt court spoke of the sanctions operating as a punishment for defendant's misconduct and employed a beyond-a-reasonable-doubt standard to find defendant in contempt, characteristics that might point to criminal treatment, those facts, in our view, do not transform a civil proceeding for litigation-misconduct sanctions into the type of proceeding that triggers the jeopardy provisions of Article I, section 12, and the Fifth Amendment. The trial court correctly denied defendant's motion to dismiss.

*Restitution*. We review an award of restitution for errors of law and for "whether the trial court's factual findings are supported by evidence in the record." *State v. Yocum*, 247 Or App 507, 509, 269 P3d 113 (2011), *rev den*, 352 Or 25 (2012) (internal quotation marks and asterisks omitted). "Whether a trial court complied with the requirements for imposing restitution is a question of law[.]" *State v. Herfurth*, 283 Or App 149, 152, 388 P3d 1104 (2016), *rev den*, 361 Or 350 (2017).

As noted, defendant assigns error to various aspects of the trial court's restitution award. His arguments, however, paint with a broad brush and, as we explain, do not demonstrate error in the court's award.

ORS 137.106(1)(a) provides that a victim of a crime must be repaid in full for any economic damages caused by the defendant:

> "If the court finds from the evidence presented that a victim suffered economic damages, * * * the court shall enter a judgment or supplemental judgment requiring that the

defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

To award restitution, a court must make three findings: "(1) the defendant has been convicted of criminal activity; (2) the victim suffered economic damages; and (3) there exists a causal relationship between the defendant's criminal activity and the economic damages." *State v. Fox*, 313 Or App 317, 322, 496 P3d 10 (2021) (citing *State v. Aguirre-Rodriguez*, 367 Or 614, 620-21, 482 P3d 62 (2021)). "Economic damages," for purposes of ORS 137.106, "[h]as the meaning given that term in ORS 31.710, except that 'economic damages' does not include future impairment of earning capacity." ORS 137.103(2). Under ORS 31.710, economic damages are "objectively verifiable monetary losses" that are reasonably foreseeable, reasonable in amount, and necessarily incurred as a result of the defendant's conduct. ORS 31.710(2)(a); *Herfurth*, 283 Or App at 156-57; *see also State v. Ramos*, 358 Or 581, 597, 368 P3d 446 (2016) ("[T]he test that a court uses to determine whether damages are too attenuated to be recoverable is whether a reasonable person in the defendant's position would have foreseen that someone in the victim's position could reasonably incur damages of the same general kind that the victim incurred."). Whether economic damages are reasonably foreseeable is, "as a general matter, a factual question for the court." *Ramos*, 358 Or at 597.

Defendant's first and most specific argument targets the award of restitution for attorney fees incurred in connection with the criminal case. He asserts that those fees were neither reasonably foreseeable nor necessarily incurred because G's attorneys, in representing her as a victim, did much of the same work that the state would typically do in a criminal prosecution. Defendant insists that "[t]hose costs were not incurred solely to repair the damage incurred from defendant's actions, but to fulfill the state's responsibility to hold defendant criminally responsible for his acts."

Those arguments are foreclosed by our recent decision in *Fox*. There, we upheld an award of restitution for

legal fees incurred by victims who hired their own attorney to "represent their interests in the criminal proceeding because 'they want[ed] somebody who they trusted to advise them in the criminal case.'" 313 Or App at 319 (brackets in original). The victims' attorney wrote a motion to quash a subpoena, represented the victims in settlement negotiations, spoke on their behalf at sentencing, and "made various appearances in court directly related to the criminal case." *Id.* at 319-20. We acknowledged that some of the services provided by the victims' attorney may have been "duplicated by the district attorney's office" but nevertheless concluded that the fees that were directly related to the criminal case were both reasonably foreseeable and necessarily incurred. We reasoned that the fees were reasonably foreseeable because a victim has the right to restitution in a criminal proceeding and "because the prosecutor does not represent a victim." *Id.* at 326. We reasoned similarly that such directly related fees were "necessarily incurred"—notwithstanding any overlap with the prosecutor's work—"because a victim is entitled to seek separate representation." *Id.* at 327. To the extent that defendant's argument supposes that restitution cannot be imposed where the victim's legal expenses incurred as a result of the defendant's crime overlap in places with the state's prosecutorial tasks, that argument is foreclosed by *Fox*. *Id.* at 326 ("[B]ecause the prosecutor does not represent a victim, it is reasonably foreseeable that victims would seek their own legal counsel to provide advice during criminal proceedings, including the restitution-related proceedings."); *see also Ramos*, 358 Or at 583 (upholding restitution award for costs of attorney investigation and witness fees).

Defendant's remaining argument is that "the amount of restitution imposed was unreasonable, unnecessary and unforeseeable." Along the same lines, defendant contends that "the trial court's calculation of the amount of restitution it awarded was speculative" and not subject to "objective verification." In support of that argument, defendant points to testimony by an attorney "that attorney billing is not specific." Although defendant highlights a few particular items of restitution in his argument, he does not separately address the different categories of restitution

awarded by the trial court with precision. We therefore view defendant's argument the same way the state does, as targeting the amount of the restitution award as a whole rather than targeting the particular categories within the award.

To be objectively verifiable, damages must be "*capable* of verification through objective facts." *DeVaux v. Presby*, 136 Or App 456, 463, 902 P2d 593 (1995) (emphasis in original); *see also State v. Jordan*, 249 Or App 93, 100-01, 274 P3d 289, *rev den*, 353 Or 103 (2012) (discussing what it means for damages to be "objectively verifiable" within meaning of ORS 31.710). Here, the claimed fees meet that standard and were, in fact, supported by documentation. Not only were the claimed fees objectively verifiable, they were, in fact, verified.

To the extent that defendant contends that the trial court erred in finding that the fees awarded were ones that were necessarily incurred, the question is whether there is "some evidence" to support the finding that fees incurred were made necessary by defendant's criminal conduct. *State v. Perdew*, 304 Or App 524, 528, 457 P3d 70 (2020). Here, there is evidence that the victims incurred the fees in exercising their rights to redress the harm caused by the conduct; that is sufficient to establish that the fees were necessarily incurred. We reasoned in *Fox* that, because a victim is entitled to seek their own representation in a criminal case, fees incurred for services directly related to the criminal cases are ones that are necessarily incurred. Similarly, as for fees relating to a contempt proceeding, a "party aggrieved by an alleged contempt of court" is entitled by statute to seek sanctions "to compensate for injury, damage or costs resulting from a past or continuing contempt of court." ORS 33.055(2)(a); ORS 33.015(4). Where, as here, the contempt is itself a crime, fees incurred in seeking to redress that harm caused by the crime through contempt are ones that are made necessary by the defendant's criminal conduct. Said another way, where a defendant's criminal conduct causes harm, attorney fees incurred by a victim in seeking the legal remedies for that harm to which they are entitled under the law are ones necessarily incurred as result of the defendant's criminal conduct. *See Fox*, 313 Or App at 326-27.

To the extent that defendant argues that the award is erroneous because the amount of the award was not foreseeable, that argument misapprehends foreseeability analysis. What is required is that it be foreseeable that a person in the victim's position would incur the particular *type* of damages at issue, not the extent or amount of damages: "[T]he test that a court uses to determine whether damages are too attenuated to be recoverable is whether a reasonable person in the defendant's position would have foreseen that someone in the victim's position could reasonably incur damages *of the same general kind* that the victim incurred." *Ramos*, 358 Or at 597 (emphasis added).

Finally, as to whether the fees were reasonable, defendant's arguments supply us with no grounds to displace the trial court's judgment. The court issued a detailed opinion examining each category of fees sought as damages. In so doing, it considered the ORS 20.075 factors considered by courts in determining a reasonable attorney fee award and made the types of judgments that courts usually make in assessing the reasonableness of requested attorney fees. Although defendant asserts that the process was speculative and subjective, determining a reasonable amount of attorney fees has never been scientifically precise. It ultimately is an act of judgment, guided by the factors identified in ORS 20.075. The court's analysis reflects that it was guided by those considerations in determining what fees were reasonable and does not reflect any legal or factual error.

Affirmed.