2022 IL App (1st) 191678-U

No. 1-19-1678

Order filed December 22, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 16 MC1 600029 |
| PAUL IVERSON, | ) ) | Honorable Karen L. O'Malley, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's convictions for indirect criminal contempt are affirmed where (1) there was no double jeopardy violation in defendant's prosecution for indirect criminal contempt and (2) no prior bad acts were improperly admitted into evidence because defendant was properly prosecuted on all counts.

¶ 2    Defendant Paul Iverson appeals several of his convictions for indirect criminal contempt. On appeal, defendant argues that his convictions on counts 1 through 5 and count 8 violated constitutional protections against double jeopardy. As an ancillary issue, defendant argues that

because the State was prohibited from prosecuting him for the conduct at issue in counts 1 through 5 and 8, evidence of that conduct was improperly admitted as other-crimes evidence which in turn denied defendant his right to a fair trial on counts 6, 7, 9, and 11.

¶ 3     For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4                                I. BACKGROUND

¶ 5     Defendant was charged by petition with twelve counts of indirect criminal contempt. The contempt charges arose out of a probate case. The decedent in the probate case, John Waters, died in Cook County in October 2011. In November 2011, defendant filed a will alleged to have been executed by Waters in March 2010. The will named defendant as both the executor and sole beneficiary of Waters' estate. Waters' four siblings requested a formal proof-of-will hearing. After an evidentiary hearing, Judge James Riley preliminarily admitted the will and allowed defendant to act as executor and probate the estate under independent administration.

¶ 6     The Waters family then filed a will-contest petition. While the petition was pending, defendant filed an inventory of the Waters estate in July 2012. Creditors then began learning of the probate matter and one creditor, Robert Pisano, filed a substantial claim against the estate. Pisano, through his attorney Richard Witry, issued a citation to discover assets regarding the estate's possessions. Defendant testified at the citation to discover assets proceedings over three days in the summer of 2012.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 7    At the conclusion of defendant's testimony, at a status conference on October 10, 2012,[2] Judge Riley entered the following order:

> "This cause coming to be heard on status of administration of the estate, the court being advised. It is ordered: (1) Paul Iverson is directed and barred from having any contact with the real estate, tenants, monies or other matters pertaining to the 35 properties testified to by Paul Iverson during the course of the citation to discover assets testimony previously heard by the court."

In March 2013, Judge Riley presided over the will-contest proceeding. Judge Riley declared the will a forgery. Defendant was removed as executor of the estate and two of Waters' siblings were appointed as co-administrators of the estate. Defendant appealed the trial court's judgment, and this court affirmed the trial court's decision in a Rule 23 order. *In re Estate of Waters*, 2014 IL App (1st) 131262-U, ¶¶ 2, 6.

¶ 8    Notwithstanding the trial court's October 2012 order, the trial court's finding that the will naming defendant as the executor and sole beneficiary of the estate was a forgery, and defendant's removal as executor of the estate, defendant continued to file documents and have contact with properties belonging to the estate. In 2014 and 2015, defendant recorded several deeds and other documents at the recorder of deeds claiming an interest in estate properties. Defendant also filed several *pro se* lawsuits in chancery court wherein he claimed an interest in estate properties. The chancery suits in turn relied on the deeds defendant filed. Because defendant's conduct impeded the administration of the estate, the estate filed several pleadings to halt defendant's continued

---

[2] There is some confusion about whether the order was entered on October 10 or 11. It appears that the order was created on October 10 and file-stamped on October 11. We will refer to the order as the October 2012 order.

defiance of the trial court's October 2012 order. The estate also sought compensation for its costs and losses.

¶ 9      Particularly relevant here is the estate's "Motion for Rule to Show Cause to Issue to Paul Iverson II" that was filed in July 2015. The motion listed the numerous deeds defendant had filed against estate properties and the numerous chancery court actions defendant had initiated concerning estate properties. The estate alleged that defendant had "repeatedly, intentionally, willfully and without remorse or compunction, violated [the court's October 2012 order] on occasions which are now almost too numerous to detail." The estate continued that defendant's conduct caused harm to the estate, delayed the administration of the estate, and were in direct contempt of the trial court's numerous rulings. The estate argued that defendant's conduct required "punitive action," the "institution of civil contempt," and "substantial monetary fines in order to protect the integrity of judicial process" in the estate proceedings. The estate recommended a fine in excess of $250,000.

¶ 10     Judge Riley resolved the estate's motion to show cause by order on September 3, 2015, after hearing the testimony[3] of estate co-administrator Daniel Waters and estate attorneys Andrew Maggio and Thomas Tartaglia. Judge Riley found that, since January 10, 2014, defendant had "repeatedly, intentionally, [and] willfully" violated the court's October 2012 order "with malice to harm the Estate." Judge Riley found that defendant's conduct had "clearly and significantly damaged" the estate. The estate was "forced to expend monies on attorneys in order to remedy the malicious and intentional actions" of defendant.

---

[3] The transcript of the witnesses' testimony is not part of the appellate record.

¶ 11  Defendant was directed to dismiss ten chancery lawsuits within seven days of the order. If defendant did not dismiss the actions within 7 days, then defendant would be subject to a $1,000 per day fine for any action that remained pending against the estate. The "penalty" was to be "assessed as costs to the Estate." Judge Riley also found in a separate order that it was proper for defendant to be charged with the estate's costs as a result of his willful and intentional violations of the court's October 2012 order. The court made findings as to costs, but the page where Judge Riley detailed his findings is missing from the record. Judge Riley also assessed "punitive damages." Judge Riley calculated the "punitive damages" as the difference between the full hourly rate the attorneys typically charged and the reduced rate the attorneys were charging the estate. The difference appears to be $300 per hour, for 97 hours, for a total of $29,100.  The total judgment entered in favor of the estate, including costs and punitive damages, was $181,940.

¶ 12  The estate filed a third motion for rule to show cause in February 2016, this time requesting that the trial court issue a criminal case number. The estate recited the history of defendant's contemptuous behavior leading up to the trial court's September 2015 finding of contempt. Defendant had not complied with any of the trial court's prior orders, by either paying the sanctions or dismissing the lawsuits. The estate also alleged that defendant had filed three new chancery lawsuits in December 2016. The estate prayed that the trial court would issue a criminal case number, for a finding of indirect criminal contempt, and a term of imprisonment for defendant's continued contempt.

¶ 13  Judge Riley granted the estate's motion and directed the clerk of the court to issue a criminal case number. Defendant filed a motion for substitution of judge, which was granted, and the case was transferred to Judge Karen O'Malley. Due to the serious nature of the criminal

contempt charges, Judge O'Malley explained to defendant that he had a panoply of constitutional rights, including the right to a jury trial, the right to counsel, the right to cross examine witnesses, the presumption of innocence, and the right to remain silent. Judge O'Malley also appointed a special prosecutor, David O'Connor, because the Cook County State's Attorney's Office was unwilling to prosecute the case. O'Connor filed a new "petition for adjudication of criminal contempt."

¶ 14    Counts 1-9 alleged violations of the trial court's October 2012 order. Each count focused on an individual parcel of property, which the October 2012 order prohibited defendant from having contact. Counts 10-12 alleged that defendant had failed to pay or otherwise comply with court orders entered on January 10, 2014, February 26, 2014, and September 3, 2015.

¶ 15    Because defendant does not contest the evidentiary sufficiency or any other factual matters, we will describe the trial testimony that is relevant to the issue defendant raises on appeal. Retired Judge James Riley testified that he was assigned the decedent's estate of John Waters in 2011. Defendant was initially appointed as the executor of the estate. Defendant also claimed to be the beneficiary of the Waters estate. As executor, defendant filed an inventory. The inventory represented defendant's sworn statement that the ten listed properties belonged to the estate.

¶ 16    Over three separate days in July and August 2012, defendant testified at a citation to discover assets hearing. Defendant testified regarding approximately 35 properties that were believed to be a part of the Waters estate. These properties included the nine properties listed in counts 1 through 9 of the petition for adjudication of criminal contempt. On October 10, 2012, Judge Riley entered the following order: "[Defendant] is directed and barred from having any contact with the real estate, tenants, monies or other matters pertaining to the 35 properties testified

to by [defendant] during the course of the citation to discover assets testimony previously heard by the court." Attorneys Richard Witry and Thomas Tartaglia testified that defendant was present when Judge Riley orally pronounced the order. By March 2013, Judge Riley determined that defendant had no legal right to the Waters estate's properties.

¶ 17    After the October 2012 order was issued, defendant filed a "series of deeds that affected properties which he had testified about and was ordered to stay away from." Judge Riley testified that the estate's attorneys were before the court "a couple of times a month" trying to resolve defendant's many filings, resulting in "hours and hours and hours of courtroom time." Judge Riley added that defendant's conduct increased the expense of litigation and drove the estate's attorney fees "through the roof."

¶ 18    The State introduced 22 documents defendant had filed at the recorder of deeds and 15 chancery complaints that defendant had filed in the circuit court. All these filings were related to the properties at issue in counts 1 through 9. Between April 2014 and July 2015, Judge Riley entered several orders declaring that sole legal title and possession of the properties rested with the estate. Judge Riley then voided the numerous deeds defendant had filed. On January 10, 2014, Judge Riley issued a monetary sanction against defendant and in favor of the estate in the amount of $14,700. On February 26, 2014, Judge Riley ordered defendant to pay attorney fees in the amount of $825.

¶ 19    The State also introduced Judge Riley's September 3, 2015, order into evidence. Judge Riley confirmed that a hearing was held to establish the "damages that were being caused to the Waters estate." That hearing resulted in a "monetary sanction" in the amount of $151,840, and "punitive damages" in the amount of $29,100. The parties stipulated that defendant had not paid

any of the monetary amounts ordered in the January 10, 2014, February 26, 2014, and September 3, 2015, orders. The parties also stipulated that defendant had not voluntarily dismissed any of the chancery suits listed in the September 2015 order.

¶ 20    The jury found defendant guilty on all twelve counts. On defendant's motion for a new trial, the trial court vacated counts 10 and 12, which charged defendant with not paying the sanctions ordered on January 10, 2014, and September 3, 2015. The trial court explained that the sanctions were entered improperly in a civil contempt proceeding because defendant was not told how he could purge the contempt. The trial court continued that defendant would have likely succeeded in an appellate challenge to the monetary sanctions. However, the trial court maintained that the remaining counts were not prohibited by double jeopardy because no "criminal proceeding" had ever been brought against defendant.

¶ 21    Defendant was sentenced to 90 days in the Cook County Jail on August 1, 2019. Defendant filed a timely notice of appeal on August 21, 2019. This is a direct appeal of the trial court's judgment.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant first argues that his convictions on counts 1 through 5 and count 8 should be vacated because they are barred by double jeopardy. Defendant explains that Judge Riley's contempt finding from September 3, 2015, and subsequent order already criminally punished defendant because he was subjected to a "six-figure monetary sanction as punishment" for his past acts. The State responds that the proceedings leading up to Judge Riley's September 3, 2015, order were civil in nature. According to the State, defendant was never placed in criminal jeopardy prior to the current prosecution and, thus, his convictions do not violate double jeopardy protections.

¶ 24 Where, as here, the facts and credibility of the witnesses are not at issue, we review a trial court's ruling on whether to dismiss a charge on double jeopardy grounds *de novo*. *People v. Jimenez*, 2020 IL App (1st) 182164, ¶ 10; *People v Gaines*, 2020 IL 125165, ¶ 24 ("Whether defendant was twice placed in jeopardy for the same offense presents a question of law subject to *de novo* review.").

¶ 25 "The double jeopardy clause of the fifth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment, provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.' " *People v. Bellmyer*, 199 Ill. 2d 529, 536-37 (2002), quoting U.S. Const. amend. V. The Illinois Constitution similarly precludes any person from being "twice put in jeopardy for the same offense." Ill. Const. 1970 Art. 1, § 10. "The double jeopardy clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *People v. Placek*, 184 Ill. 2d 370, 376-77 (1998).

¶ 26 The United States Supreme Court has "long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment." *Hudson v. United States*, 522 U.S. 93, 99-100 (1997) (internal citations and quotations omitted). Instead, the clause "prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938).

¶ 27 The State does not dispute that all the conduct at issue in counts 1 through 5 and count 8 was conduct also at issue in the contempt proceedings resulting in the significant costs and punitive

damages award in favor of the estate. Defendant does not dispute that an individual can be subject to civil and criminal sanctions for the same conduct. Thus, the dispositive issue in this case is whether the proceedings on the estate's second motion for a rule to show cause, which resulted in a monetary judgment against defendant and in favor of the estate, constituted a criminal proceeding.

¶ 28 "The primary determinant of whether contempt proceedings are civil or criminal in nature is the purpose for which contempt sanctions are imposed." *In re Marriage of Betts*, 200 Ill. App. 3d 26, 43 (1990); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911) (explaining that it is the "character and purpose" of the contempt sanction that determines whether it is criminal or civil). "If contempt sanctions are imposed for coercive purposes—to compel the contemnor to perform a particular act—the contempt is civil in nature." *Id.* "On the other hand, criminal contempt sanctions are imposed for the purpose of punishing past misconduct." *Id.*

¶ 29 The United States Supreme Court has further provided a set of rules in cases where a monetary sanction has been imposed on a contemnor. "If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks v. Feiock*, 485 U.S. 624, 632 (1988). The Court has also explained that "[m]ost contempt sanctions, like most criminal punishments, to some extent punish a prior offense as well as coerce an offender's future obedience." *International Union, United Mine Works of America v. Bagwell*, 512 U.S. 821, 827 (1994); *People v. Elbert*, 287 Ill. 458, 463 (1919) ("The dividing line between the acts constituting

criminal and those constituting civil contempts becomes indistinct in those cases where the two gradually merge into each other.").

¶ 30    Here, the trial court's September 3, 2015, order was clearly coercive and remedial. First, the trial court's order directed defendant to dismiss ten lawsuits that had been filed in violation of the court's October 2012 order. If defendant did not dismiss those lawsuits within 7 days, then he was subjected to a fine of $1,000 per day for each action that remained pending. This was clearly coercive and defendant does not contend otherwise, as defendant had the opportunity to purge himself of the contempt and avoid the fine. Second, the other part of the trial court's September 3, 2015, order was remedial as a sort of compensatory damages award to the estate, along with attorney fees and costs. Judge Riley testified that the hearing leading to the contempt sanctions laid out the "damages that were being caused" to the estate. Even the "punitive damages," as labeled in the order, were calculated to provide the estate's attorneys with their full hourly rate for time spent defending the estate from defendant's contemptuous behavior. See *Harper v. Missouri Pacific R. Co.*, 282 Ill. App. 3d 19, 30 (1996) ("It is appropriate in both civil and criminal contempt cases to require the contumacious party to bear the reasonable costs and attorney fees of a contempt proceeding, especially where, such as here, a private litigant brings before the court the fact of an indirect contempt.").

¶ 31    We recognize that our supreme court long ago parted ways with the federal courts on the propriety of compensatory damages in contempt proceedings. See *Rothschild & Co. v. Steger & Sons Piano Manufacturing Co.*, 256 Ill. 196, 205 (1912) (holding that a fine in a civil contempt proceeding is "paid over, when collected, not to the complainant in the equity proceeding, but to the public"); *Keuper v. Beechen, Dill and Sperling Builders Inc.*, 301 Ill. App. 3d 667, 669-70

1998) ("In Illinois, it is well established that civil contempt is an affront to the authority of the court and not a private remedy, that any fine imposed pursuant to the contempt is payable to the public treasury and not a plaintiff, and that a plaintiff may not recover compensatory damages in a civil contempt proceeding."). To the extent the trial court's monetary sanction in the September 3, 2015, order was compensatory, the proper procedure for defendant to take would have been to appeal the order and request that this court reverse that portion of the trial court's order. See *Keuper*, 301 Ill. App. 3d at 671 (reversing the trial court's award of compensatory damages which stemmed from a civil contempt proceeding). It does not appear that defendant ever appealed or otherwise challenged the trial court's September 3, 2015, order. *People v. Doherty*, 165 Ill. App. 3d 630, 637-38 (1988) (noting that because the defendant had not appealed the initial contempt finding, the propriety of the sentence handed down in that proceeding was not before the court).

¶ 32     The trial court's inability to award compensatory damages does not change the result here. Contrary to defendant's argument, the "dominant purpose" of the monetary award was not to punish defendant and vindicate the court's authority. The "dominant purpose" was to compensate, albeit erroneously, the estate for having to continuously defend against defendant's contemptuous conduct. "The purpose of awarding compensatory damages is to make the injured party whole and restore him to the position he was in before the loss." *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 61 (2009). The estate, not the court system and public, was the primary beneficiary of the trial court's September 3, 2015, order. That the trial court's authority may have been vindicated in the process was incidental to the purpose of coercing defendant's future obedience to the October 2012 order and remediating the estate's losses. See *Bagwell*, 512 U.S. at 828.

¶ 33    In short, the proceedings leading up to the trial court's September 3, 2015, order shared much more in common with a civil proceeding than a criminal proceeding. The proceedings were not initiated through an indictment, defendant never faced the infamous criminal penalty of imprisonment, the underlying conduct is not independently criminal, the assigned purpose of compensating the estate is rational, and the monetary award is not excessive in relation to the purpose of compensating the estate. See *Hudson*, 522 U.S. at 99-100; *Oregon v. Halvorson*, 315 Or. App. 112, 119 (2021) (rejecting a double jeopardy challenge where the initial contempt proceedings, which resulted in a significant monetary sanction, were typical of a "civil proceeding for litigation-misconduct").

¶ 34    We note that the parties dispute whether the double jeopardy issue was fully preserved below. The issue was raised at various times during the indirect criminal contempt proceedings. The trial court ultimately concluded that defendant's double jeopardy claims applied to all counts in the criminal contempt petition. Defendant invokes both plain error review and a claim of ineffective assistance of counsel if the issue was not fully preserved. However, we need not decided whether the issue was preserved because, preserved or not, there was no error. "[W]ithout error, there can be no plain error." *People v. Smith*, 372 Ill. App. 3d 179, 181 (2007). Also, because any motion to dismiss regarding counts 1-5 and count 8 would have been fruitless, trial counsel was not ineffective for not moving to dismiss those counts on double jeopardy grounds. See *In re M.G.*, 2022 IL App (4th) 210679, ¶ 87.

¶ 35    We also necessarily reject defendant's argument that the evidence on counts 1 through 5 and count 8 constituted other bad act evidence. All the counts were properly before the jury. The jury heard no improper evidence and, thus, there was no error.

¶ 36                                    III. CONCLUSION

¶ 37      For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 38      Affirmed.